*STATE v. GEORGE W. SWEPSON.

*Indictment—Misdemeanor—Acquittal Procured by Fraud.*

1. A verdict of acquittal on an indictment for a misdemeanor procured by the trick or fraud of the defendant is a nullity, and the defendant can be again put on trial for the same offence.

2. The defendant was indicted for cheating the State, and a motion was made in the Court below by defendant's counsel (he not being present and the Solicitor for the State not being ready for trial) upon an allegation that the matter had been compromised, that a verdict of "not guilty" should be entered; His Honor thereupon directed a jury to be impannelled and a verdict of "not guilty" to be entered and refused to permit an appeal to this Court and also refused to permit a statement of the facts to be made part of the record; thereafter His Honor went out of office. Upon a motion in this Court that a mandamus issue to the Court below to cause inquiry to be made into the truth of the alleged facts, and if true, to cause the defendant to be again put on trial; *It was held,* that this Court has no jurisdiction in the premises; the remedy is in the Court below where the defendant can be again put on trial and the truth of the facts alleged by the State inquired into upon a plea of former acquittal.

(*State* v. *Tilghman,* 11 Ire. 513; *State* v. *Tisdale,* 2 Dev. & Bat. 159; *Casey's* case, Busb. 209; *Thornton's,* 13 Ire. 256; *Tilletson's,* 7 Jones 114; *Woodly's,* 2 Jones 276, cited, commented on and approved.)

INDICTMENT tried at Spring Term, 1875, of WAKE Superior Court, before *Watts, J.*

At June Term, 1874, of said Court the grand jury made a presentment against the defendant and one M. S. Littlefield for an offence committed against the State, and at October Term following a bill of indictment was found, in which it was substantially charged that they did combine, conspire,

---

* Smith C. J. having been of counsel did not sit on the hearing of this case.

confederate and agree together and with divers other persons to the jurors unknown, by divers false pretences and subtle means and devices, to obtain and acquire to themselves, and from the State of North Carolina, divers bonds to be issued by the State, with coupons attached, of the value of $1000 each, known as special tax bonds, to the amount of four millions of dollars, and to cheat and defraud the State of the value thereof. And in pursuance of said conspiracy, on the 19th of August, 1868, and on the 29th of January, 1869, they "did incite, procure, obtain and have enacted by the general assembly" an act to amend the charter of the W. N. C. R. R. Co. and that they were appointed commissioners to open books of subscription for the capital stock with authority to receive subscriptions from solvent individuals and corporations, and five per cent of such subscriptions; and on the 15th of October, 1868, did as commissioners sign, seal and deliver to the board of internal improvements of the State, a certain false and fraudulent certificate, in which it was certified that $308,500 had been duly subscribed to said stock, and afterwards other large sums, and that five per cent thereof had been paid in cash, to construct the western division of said road; whereas in fact and in truth said sum had not been truly and *bona fide* subscribed, nor said per centage paid in cash, which was well known to them when they signed said certificate. The bill further charged that they unlawfully and fraudulently pretended to enter into contracts for the completion of the road, when in fact no real or *bona fide* contract was made, and that the compliance with the charter of the company was merely a formal one to procure the issuance of the bonds of the State in payment of the stock; the said Littlefield had subscribed for a large amount of said stock, and was insolvent and unable to pay the same, and that said per centage thereon had not been paid, and that this was known to the defendant at the time; that by said false pre-

tences and devices they unlawfully and fraudulently obtained from the public treasurer a large amount of said bonds issued by the State in payment of stock in said company, a portion of which they fraudulently appropriated and paid to certain members of the general assembly of 1868-"69 and other persons, to secure and obtain the enactment of said amendment, and the balance they appropriated to their own use and for their individual purposes. A capias was accordingly issued and returned by the sheriff "not found as to Littlefield; not executed as to Swepson, by order of Solicitor and Smith & Strong, counsel for the State," and the case was continued for the State. At Spring Term, 1875, of said Court, the sheriff returned the capias to the clerk, endorsed "Littlefield not to be found; defendant Swepson sick." Thereupon the Court directed the said endorsement to be entered upon the records, and ordered,—" It appearing to the Court that the Solicitor not having asked for an alias capias or entered a nolle prosequi, it is ordered that the clerk issue an instanter capias for the defendants," which was returned executed as to the defendant, Swepson. A nol. pros. was entered as to Littlefield, and the trial coming on the defendant pleaded not guilty, a jury were sworn and impannelled to try the issue, and " under the instructions of the Court the said jury for their verdict say that the defendant is not guilty."

The Solicitor then filed his petition in this Court for a mandamus which is substantially as follows (after giving date of said presentment and indictment as above set forth):—That the State was not prepared to try the indictment at the term after it was found by the grand jury, and the petitioner directed the sheriff not to serve the capias upon the defendant, his co-defendant being at that time beyond the limits of the State, and it was therefore returned into Court without execution on either, and for similar reasons the capias issuing from January Term, 1875, of said

Court was not executed. He further stated that witnesses had been summoned for the State and many of them were material witnesses but not in attendance, and at the said Spring Term as your petitioner heard and believed, the defendant was sick and unable to be present in Court; that the late Governor Caldwell had employed two other attorneys to aid in the prosecution of the action, and it was then expected and intended to prepare the case and be able to try it at the following term; that in the absence of said counsel and without notice to petitioner, the counsel of defendant moved that a verdict of not guilty should be entered for the defendant, for the reason, that the offence charged had been the subject of an agreement and compromise between the defendant and the proper officers on behalf of the State, as appeared by a copy of proceedings had in Buncombe Superior Court in an indictment there pending, the defendant not being present in Court and unable from sickness to attend. This motion was strenuously resisted by your petitioner, but it was granted, and without plea the presiding Judge ordered the jury to be impannelled and a verdict of not guilty to be entered, which was done; and that soon thereafter he caused the facts which transpired to be written out as follows: " The counsel for defendant—the defendant not being present in Court—moved that a verdict of not guilty be entered as to him on the ground that an indictment for the same offence against him had been theretofore compromised by the State, and a nolle prosequi entered therein, and in support of the motion the counsel read to the Court the transcript of which the following is a copy,— the Solicitor for the State objected to the calling of the cause at this term, or to any motion being heard in reference thereto, because he was not ready for the trial of the same, for the reasons which appeared from the papers in the case; that said defendant had never been arrested till that day in pursuance of an order made on the same day by the Court

without any notice to him. The said Solicitor further objected that the said motion was without precedent or authority in law. The objections were overruled by His Honor who thereupon caused a jury to be impannelled, and there being no plea pleaded or evidence given to the jury, His Honor told the jury that the said indictment against the defendant had been compromised by the State; that he did not intend to allow the honor of the State to be tarnished, and directed said jury to return a verdict of not guilty, which was accordingly done, and the defendant was ordered to be discharged. The above is a true statement of the facts. The petitioner further stated that he did not waive the presence of the defendants, but refused to assent to any proceeding in the case; that an appeal was asked and refused on the ground that it would not lie from a judgment on a verdict of acquittal; that on Saturday of same week one of his associated counsel called upon the Judge and asked that the facts which had transpired in Court relating to the matters aforesaid should be made a part of the record of the term, in order that the action of the Court in the premises might be reviewed in this Court on appeal, or other proper proceeding, and to this end began to read over, and did read a part of the statement as contained in the paper set forth above, when the Judge declined to make any such order, and refused to hear the statement read, with a view to its accuracy of detail and for that purpose only. Your petitioner on behalf of the State avers that said action of the Judge was irregular and without authority of law, and he is without remedy therefor except by the mandatory powers and process of this Court, and he is advised that the said compromise, if itself legal, is no defence to this indictment, and if it were, that the action of the Judge was not the proper and legal way of securing it for defendant. Wherefore the petitioner prays that a writ of mandamus issue to said S. W. Watts, Judge, &c., commanding him to cause

the records to be amended so as to truly set forth the pro-
ceedings had upon said motion, and that the record when
so amended be certified to this Court, to the end that they
may be reviewed and annulled, and the indictment may be
tried according to law, and for such other and further relief
as the case may require; and also that a copy of this peti-
tion be served on him together with a rule requiring him
to show cause why a mandamus shall not issue as prayed
for.   The petition was sworn to by the Solicitor on the 12th
of August, 1875, and filed in this Court on the 16th of said
month.   And at January Term, 1878, of this Court, the
State moved upon the facts embodied in the above affidavit
and petition to remand the case to the Court below to the
end that a trial may be had according to law.

*Attorney General*, for the State.

*Messrs. Merrimon, Fuller & Ashe* and *D. G. Fowle*, for the
defendant.

RODMAN, J.   On the 12th of August, 1875, the Solicitor
of the Sixth Judicial District presented to this Court his
petition duly sworn to, in which he set forth in brief as fol-
lows :   That at October Term, 1874, an indictment for con-
spiracy and cheating by false pretences was found by the
grand jury of Wake county against Littlefield and Swep-
son, on which writs of capias were issued up to April
Term, 1875, none of which had been executed at the com-
mencement of that term.   The omission to execute these
writs on Swepson was by direction of the Solicitor.   Little-
field could not be found.   The State had retained counsel
to aid the Solicitor in the prosecution.   At some time during
April aforesaid, in the absence of the counsel as retained,
the counsel for Swepson moved that a verdict of not guilty
should be entered for him, on the ground that as he alleged
the action had been compromised.   The defendant had been

arrested on that day under an order made on that day by the Judge without the knowledge of the Solicitor, but was not present in Court, and was too sick to be able to be present. The motion was opposed by the Solicitor, but the Judge ordered a jury to be impannelled and a verdict of not guilty to be entered, which was done. The [State was not ready for trial and its material witnesses were not present, and no witnesses for the State were examined. An appeal was asked for on behalf of the State which was refused. The counsel for the State then prepared a statement of the facts above stated, and requested the Judge to have the same made a part of the record, which he also refused. The petitioner prayed that a mandamus issue to the Judge commanding him " to cause the record to be amended so as to truly set forth the proceedings had upon said motion, and that the record when so amended be certified to this Court, to the end that said proceedings be reviewed and annulled, and the said indictment may be tried according to law, and for such other and further relief, &c."

At January Term, 1876, upon the affidavit and motion aforesaid, this Court ordered a certiorari and mandamus to issue. Before any return was made to the mandamus the Judge before whom the case was tried and to whom it was directed, resigned and went out of office.

At January Term, 1877, a mandamus was ordered to be issued to the Judge of Wake Superior Court with a copy of the affidavit, requiring him to inquire into the truth of the facts alleged therein and to report to this Court. This he failed to do, and at the following term it was moved to direct the Judge who should hold the next term of Wake Superior Court to inquire into the truth of the alleged facts, and if he shall find them to be true substantially as they are alleged, that he cause the defendant to be again arrested and put on his trial on the indictment.

If the facts alleged be true it can not be denied that the

Judge before whom the alleged proceedings took place was ignorant or scandalously forgetful of his duties, and that one whom a grand jury had found fit to be tried for a serious offence ·has escaped a fair trial by management and fraud.

At the last term of this Court we deferred any action on the said motion then made, in the expectation that the Attorney General, or other learned counsel for the State, would find some precedent or authority to warrant us in granting his motion; but that has not been done, and our own researches have failed to find any, and we should not feel justified in longer delaying our judgment on the motion.

It must be clear that in a case such as is presented by the affidavit—which for the present purpose only, we are obliged to assume to be true—the State *ought* to have some remedy. Guilt can not be allowed to protect itself by fraud and corruption, or else, the tribunals of justice become dens of thieves, and law as administered in them is a machine to punish the weak and screen the powerful. But the remedy is not to be had in this Court, and we do not know why the State has sought it here in a proceeding for which no precedent has been found. The jurisdiction of this Court with few exceptions is wholly appellate. It has no original jurisdiction to require a Superior Court to put an acquitted person again on trial, or to inquire whether or not the acquittal was procured by his fraud. The motion must be refused; but this refusal does not imply a failure of justice. There is a remedy not without precedent or authority for its use, plain, and not of infrequent use, laid down in the elementary works on criminal law, and supported by the adjudications of respectable Courts. This remedy is in the Court in which the trial was had, and is independent of any action of this Court. It is asserted in many text books and dicta of Judges and supported by some decisions, that a verdict of acquittal on an indictment for a *misdemeanor* pro-

cured by the trick or fraud of the defendant, is a nullity, and may be treated as such; and the person acquitted by such means may be tried again for the offence of which he was acquitted. 3 Greenl. Ev. § 38; 1 Whar. Cr. Law, § 546; 3 Ibid. §§ 3221, 3222; 1 Chitty Cr. Law, 657.

In *State* v. *Tilghman,* 11 Ire. 513, the defendant was convicted of murder and moved for a new trial, or for a *venire de novo* as on a mistrial, because of the improper conduct of the jury in having separated, and having conversed and corresponded by letters with other persons. The Judge below refused the motion and gave judgment against the defendant which was affirmed on appeal in this Court. PEARSON, J. in delivering the opinion of the Court, says: That when it is *made to appear on the record* that there has not been a *fair trial,* the Court had a right to grant a *venire de novo,* whether the verdict was *for or against the prisoner.* Again he says: "But if the fact be that undue influence was brought to bear on the jury, as if they were fed at the charge of the prosecutor, or of the prisoner, or if they be solicited and advised how their verdict should be, &c., *in all such cases there has in contemplation of law been no trial,* and this Court as a matter of law will direct a trial to be had, whether the former proceeding purports to have *acquitted or convicted the prisoner.*" It will be noted that so much of this opinion as relates to the action of the Court after an *acquittal,* was only a dictum of the Judge, not applicable to the case on trial. The principle that fraud will avoid a verdict in a criminal action was recognized by this Court in *State* v. *Tisdale,* 2 Dev. & Bat. 159, and in *State* v. *Casey,* Busb. 209, though it was not applied, as the Court did not consider the conduct of the defendants, fraudulent. Many cases are cited in the text books referred to, as sustaining the principle stated. Most of them are not accessible to me. I cite, however, such as I have examined and which appear to be

in point, 4 Mass. 477 ; 48 Mo. 70 ; *Rex* v. *Bear*, 2 Salk. 646; *State* v. *Norvell*, 2 Yerger (Tenn.) 24.

Cases of acquittal procured by fraud of the defendant form an exception to the general rule, that no one shall be twice put in jeopardy for the same offence. This exception, it will be seen, does not apply to capital cases, and perhaps not to felonies in general (unless we accept the dictum of PEARSON, J. above quoted, as law). The *cases* which I have seen are mostly of proceedings before inferior jurisdictions, such as magistrates, &c., though there is no reason why it should be confined to them. The language of the text books extends to all misdemeanors in whatever Courts they may be tried.

From these authorities it seems that the Solicitor may with, and perhaps without, the consent of the Judge cause the defendant to be again arrested and put on trial on the old bill; (see *State* v. *Thornton*, 13 Ire. 256 ; *State* v. *Tillet-son*, 7 Jones 114 ; *State* v. *Woody*, 2 Jones 276 ; *State* v. *Tilgh-man*, 11 Ire. 513,) or if no statute of limitation bars, he may send a new bill to the grand jury, and on its being found, proceed to trial of the defendant as usual, disregarding the former verdict and judgment as nullities on account of the fraud in procuring them. In either case the defendant may plead his former acquittal to which the Solicitor may reply that it was procured by the fraud of the defendant. Thus an issue of fact is raised to be tried by a jury under the instructions of the Judge as other issues are, and any question of law involved may ultimately come regularly before this Court for adjudication. The motion is refused. The indictment can scarcely be considered as having been brought into this Court, but if it is here, it is remanded.

PER CURIAM.            Motion refused.