STATE v. JAMES GRIFFIS.

*Indictment for Trespass—Practice—Suspension of Judgment on Payment of Costs—Right of Appeal.*

Where a defendant is found guilty by a justice of the peace of an offence of which the latter has final jurisdiction and an order is made without defendant's consent that judgment be suspended upon payment of costs, the defendant is entitled, as a matter of right, to an appeal to the Superior Court for a *trial de novo* and need not resort to the circuitous remedy of a *recordari.*

The defendant was found guilty before a justice of the peace of a trespass on land and from an order suspending judgment on payment of costs he appealed to the Superior Court of WAKE county, when, at July Term, 1895, it was heard before *Timberlake, J.* Counsel for State moved to dismiss the appeal upon the ground that on the record as certified to by the Justice, no appeal could lie.

The record was as follows:

"Affidavit.

"Edith M. Partin, being duly sworn, says that James Griffis did on or about the 10th of April, 1895, wilfully and unlawfully enter and trespass upon her land in Middle Creek township, by hacking and cutting certain pine trees thereon, after having been forbidden, contrary to the statute," etc.

Warrant: "To any constable, etc. For cause stated in the above affidavit, you will forthwith arrest James Griffis, and bring him before me or some other Justice of the Peace of Wake County, to answer the charge of trespass upon the land of Edith M. Partin after having been forbidden. Herein fail not," etc. Thereupon the defendant was arrested and tried.

Judgment: "The warrant in the above case having been returned before me, the same was taken up for trial on Saturday, May 11, 1895, the defendant appearing in person and by attorney, and pleading not guilty. Upon hearing allegations and proofs of the State and argument of counsel, no evidence being offered by defendant, it is adjudged that defendant is guilty of the offence charged in the warrant; and it is further adjudged that the judgment in the case be suspended upon defendant's paying the cost, amounting to $15.00."

His Honor allowed the motion to dismiss and defendant appealed.

*The Attorney General,* for the State.
*Messrs. Argo & Snow,* for defendant (appellant).

AVERY, J.: We have had occasion in *State* v. *Crook,* 115 N. C., 763, to comment upon the fact that the practice adopted in the courts of this State of suspending judgment upon the payment of cost, is a peculiar one for which we have searched in vain for precedents elsewhere. Indeed, it has proved difficult to find adjudications in other courts furnishing any analogies which would aid us in reaching a conclusion as to the force and effect of such orders. It appears, however, that a practice somewhat similar had prevailed for many years in the courts of Massachusetts before it received the legislative sanction by enactment into a statute. *Commonwealth* v. *Dondican,* 115 Mass., 136. But that Court and those of Florida and Mississippi, (*Gibson* v. *State,* 68 Miss., 241; *ex parte* Williams, 25 Fla., 310) where the Massachusetts idea seems to have been transplanted, though they may differ as to the manner or details of the proceeding, concur in holding that the sentence of the court, whether upon a finding or a confession of guilt,

can be suspended only with the consent of the defendant. But as the postponement of punishment, with the possibility that it may never be inflicted, is deemed a favor to him, it is presumed by the Court that he assents to such an order when made in his presence and without objection on his part. *State* v. *Crook, supra,* at p. 766 ; *Gibson* v. *State, supra.* Where, under the practice prevailing in Massachussetts, the order was made that the judgment lie on file, it was entered with the consent of both the defendant and the Commonwealth's attorney, and left either at liberty to have the case reinstated on the docket and to demand that the court proceed to judgment. We have heretofore had occasion, in *State* v. *Crook, supra,* to call attention to the fact that the authorties which we have cited sustained the right of the court to pronounce judgment for the costs in the same order that provides for the suspension of sentence of fine or imprisonment indefinitely or to a time certain. Every defendant who is convicted before a justice of the peace of any criminal offence has a right to appeal and have the issue tried *de novo* in a higher court. Had the justice adjudged that the defendant be fined or imprisoned and thereupon refused to allow him to prosecute an appeal demanded in apt time and in the manner prescribed by law, it cannot be questioned that he would have had the right to invoke the power of such higher court to compel the transmission of the record to the end that the trial *de novo* might have been had above. *State* v. *Sykes,* 104 N. C., 700. The law does not tolerate the invasion of an acknowledged right by indirection when it can not be done directly. It is in order to preclude the possibility of such an infringment of individual right, that the authority of the court, on conviction, to postpone the infliction of punishment has been conceded only where the defendant either expressly assents or, being present, fails to

object, and is therefore presumed to give his consent to the order. This theory has been approved by us in *State* v. *Crook*, but, were that not true, it would be a manifest invasion of the right of appeal guaranteed by the statute (*Code*, Sec. 900) to every defendant on conviction in a criminal prosecution, to impose upon him against his will a tax which is ordinarily an incident to a rightful conviction. But where he gives notice of appeal at the time of trial, as we must assume the defendant did, that is unmistakably a dissent to the postponement of judgment, and the court before which he was convicted must not be allowed to adopt a practice which would put it in the power of justices' courts to load innocent defendants with heavy burdens by refusing indefinitely to pronounce any judgment except that as to costs.

As long as the judgment of the justice, from which the defendant appealed, stands, it gives rise to the inference that it was entered with his consent, and where a judgment is entered upon a confession of guilt or upon a plea of *nolo contendere* or in any way upon a submission of a defendant to the authority of the court, he is not allowed by appeal to controvert his voluntary acknowledgment. *Rush* v. *Halcyon*, 67 N. C., 47 ; *Philpot* v. *State*, 65 N. H., 250 ; *City of Edens* v. *Beck*, 47 Mo., 234 ; 12 Am. & Eng. Enc., 487. A defendant may put himself in this predicament of his own free will, but no justice of the peace can compel him to forego the right of appeal which the law gives him.

It does not seem to us necessary to the determination of this appeal that we should pass upon the question whether the usual order of a trial court, made at the request or with the assent of a defendant, that judgment be suspended upon the payment of costs, is reviewable by appeal to the Supreme Court from a Superior or Criminal court, as a

conviction, or whether it is, when entered in a justice's court, a sentence which gives to a defendant the right to a trial *de novo* on appeal to the Superior Court under our statute. *Code*, Sections 1234 and 900. The question presented here is not whether such judgment, when entered by consent of the defendant, is a conviction or sentence in contemplation of law, but whether an appeal lies when such order is entered against the will of the defendant, as is evinced in this case by his asking immediately for an appeal. This is not, on the other hand, in the ordinary sense, a refusal to proceed to judgment, but a persistent claim of the right, on the part of the inferior tribunal, to enter an order that upon its face involves the false assumption that it is entered with the defendant's assent. It is true that the defendant had the right to demand that he be sentenced, though a prayer for judgment upon himself would have been a somewhat novel practice, but, while he did not make such motion, the appeal is his protest against and exception to the order made. Was the Superior Court authorized to proceed to trial *de novo*? Or was it necessary for the defendant to bring up the case by writ of *recordari*, get an order in the nature of a *procedendo*, and wait for redress till by that tedious practice the justice should be compelled to enter an appealable judgment.

In the cases of *State* v. *Swepson*, 79 N. C., 632; 81 N. C., 571; 83 N. C., 584, and 84 N. C., 827, it was held that the refusal of the Superior Court to entertain a motion to amend a record upon the erroneous idea of want of power to amend, was reviewable not by appeal but by *certiorari* under the supervisory power of the Supreme Court. If the same circuitous practice is to be adopted by the Superior Court in supervising the proceedings of an inferior tribunal, which is not a court of record, it would follow that the judgment of the court below dismissing the appeal

must be sustained, and the defendant must seek redress by a *recordari* which is a remedy peculiar to this State.  He would be compelled according to that practice to first file his petition for *recordari* and also *supersedeas* in order to protect himself from arrest for costs, and upon the granting of the order, after notice to the prosecution and the filing a second time of the certified proceeding, which is now already before the Superior Court upon the first hearing, an order in the nature of a *procedendo* would issue to the justice to proceed to judgment so as to allow the defendant at a subsequent term to bring the case up for trial *de novo* in the higher court.  When brought up, after so much circumlocution and loss of time, the case would stand for trial upon precisely the same record now sent with the addition, if the justice acted in good faith in making his former order, of a judgment for sixpence and the cost.

As a rule the writ of *recordari* is used to bring up the proceedings of justices' courts either for the purpose of trial *de novo* or for reversal of judgment for error (*Leatherwood* v. *Moody*, 3 Ired., 129) and upon the ground either that the petitioner was not made a party to the action (*Critcher* v. *McAden*, 67 N. C., 399 ; *Carmer* v. *Evans*, 8 N. C., 55) or that he was deprived of his appeal by fraud, accident, surprise, excusable neglect or denial of his right by the justice. *Satchwell* v. *Rispess*, 10 Ired., 365 ; *Railroad* v. *Vinson*, 8 Jones, 119 ; *Richardson* v. *Debnam*, 75 N. C., 390.  In a case where the appeal has not been lost by misconduct of the justice of the peace the petitioner is required to show merit in the application.  *Pritchard* v. *Sanderson*, 92 N. C., 41 ; *State* v. *Warren*, 100 N. C., 489.  The writ of *recordari* which is said to be used only in this State, and the writs of error and *certiorari* substituted for it elsewhere "are not resorted to as a rule except in cases in

which the party aggrieved has by his misfortune lost the opportunity of taking the ordinary statutory appeal." 12 Am. & Eng. Enc., 489; Murfree Justice's Prac., Sec. 718. It seems, therefore, that we are dealing with an unusual case arising under a peculiar practice, and should not therefore look for precedents or analogies to jurisdictions where no. such practice is adopted, but rather to reason and the policy of the law.   The defendant did not neglect to take an appeal but prayed promptly for his right at the time when the justice's order was made and it was then and there allowed.   The justice had then done everything that he contemplated doing.   That court was not a court of record, and it has been held that its proceedings may be proved by parol. *State* v. *Green*, 100 N. C., 419; *Reeves* v. *Davis*, 80 N. C., 209.   In the exercise of supervisory power over an inferior court where proceedings are only *quasi* records susceptible of proof by parol, it does not seem that the same care is required as in the use of the writ of *certiorari* sent to a lower court of record, because it is the duty of the higher tribunal to see that the records of the inferior court, where they supplement its own, not only import verity but speak the truth, while no such obligation grows out of the lower when its proceedings are only *quasi* records.   Moreover, on appeal from the Superior to the Supreme Court, if no error is shown, the judgment below stands affirmed, but error in a justice's judgment is corrected by entering the proper judgment in the Superior Court on appeal.   It is of little importance in such cases that the *quasi* record, kept by the justice of what was done by him, is right or wrong.   The enduring record made above on appeal imports verity and is not a mere supplement of that below.

For the reasons given we think it unnecessary to compel the defendant to follow so circuitous a route to obtain the

adjudication of his rights, when the policy of our law is to grant him a speedy hearing in all of our courts. We can conceive of no evil consequences that can result from the general application of a rule so just in its enforcement in the particular case before us. We are aware that the statutes of some of our sister States have made it the duty of justices of the peace to impose a sentence of imprisonment or fine, though the fine may be nominal, in every case. But we have recognized as lawful and commended, in some instances as a salutary practice, the suspension of judgment in the Superior and Crimnal Courts. The trend of legislation is towards enlarging the jurisdiction of justices of the peace, and, in the absence of legislation, we are not empowered to prohibit them from exercising the authority which is conceded to be incidental to the jurisdiction to try in the Superior Court the very same offences after the lapse of 12 months from the time they are committed. Besides, while the power may be abused, as in the case at bar, it may on the other hand be used to bring about reformations or to extend needed indulgence to those who are guilty of petty offences and prefer to earn the oosts by their labor rather than suffer imprisonment and subject the public to the expense of their maintenance.

We are of the opinion that the court below erred in refusing to proceed to trial *de novo*.

Judgment Reversed.