STATE v. D. L. TRIPP.

(Filed 2 December, 1914.)

1. Criminal Law — Courts—Judgment Suspended—Consent of Defendant—Recorders' Courts.

The authority of the courts having jurisdiction of the subject-matter to suspend judgment upon conviction in criminal matters for a determinate period and for a reasonable length of time, arising from the disposition of the court to ameliorate the condition of the defendant, and requiring his consent, express or implied by his presence at the time without objection, or otherwise, applies to municipal or recorders' courts. The power of the recorder, under the statute, to suspend the judgment, and the constitutionality of the statutory jurisdiction conferred, is upheld in this case. *S. v. Hyman,* 164 N. C., 411.

2. Same—Appeal—Trial de Novo—Waiver.

When it appears that a defendant convicted in a criminal action has consented that the judgment be suspended against him, it will be con-

sidered a waiver of his right of appeal on the principal issue of his guilt or innocence;. and, where this has been done in a court inferior to the Superior Court, of his right to a trial *de novo*, under the statute.

### 3. Same—Writ of Review—Procedure—Constitutional Law—Statutes.

There being no appeal provided where a judgment in a criminal action has been suspended by the trial court with the defendant's consent, and sentence subsequently imposed, the Supreme Court has authority under Article IV, sec. 8, of our Constitution, and the Superior Court under Revisal, sec. 584, in the exercise of its appellate jurisdiction, to review the judicial proceedings of courts of inferior jurisdiction by writs of *certiorari, recordari,* and *supersedeas,* in order to afford a litigant his legal right of redress; and except in rare instances, which do not obtain in the case at bar, the appellate courts are confined to the facts as they appear of record, and can only review the proceedings as to their regularity or on questions of law or legal inference, as where the lower court has refused to hear evidence on the subject before imposing the sentence or has committed manifest and gross abuse of the discretion reposed in them.

APPEAL by defendant from *Rountree, J.,* at August Term, 1914, of DURHAM.

Criminal action. On the hearing it was made to appear that on 22 December, 1913, defendant was convicted in two cases in recorder's court of Durham, on warrants charging him with unlawfully selling spirituous liquors. In one case he was sentenced to pay a fine of $100 and costs, which was complied with. In the second case the following entry was made: "The defendant comes into court and pleads not guilty. After hearing the evidence in this case it is adjudged that the defendant is guilty, and the judgment is suspended, the defendant to give bond in the sum of $100 to appear at this court on the first Tuesday on each and every month for twelve months and show that he is of good behavior and not handling spirituous liquors unlawfully"; and in reference to this last proceeding, the case on appeal states further: "The defendant was personally present in court and also represented by counsel when said order and judgment were made, and consented thereto, and did not appeal therefrom. The defendant gave the $100 bond required and appeared on the first Tuesday of each and every month as required, when his conduct was inquired into, until the first Tuesday in May, 1914, when he failed to appear, and was called and failed, but did appear on 7 May, 1914, the forfeiture of the bond being then stricken out at the request of the defendant. On 7 May the city attorney, Charles Scarlett, prosecuting officer of the recorder's court, stated that he desired to offer some evidence in regard to the defendant's conduct, and the case was continued from time to time until 23 June, 1914, when it was heard before P. C. Graham, recorder of the recorder's court in Durham, in regular session held in the courthouse in the city of Durham. The State and the de-

fendant being represented by counsel, the recorder heard evidence offered both by the State and the defendant, and after hearing said evidence found the facts."

Thereupon follows a detailed statement of facts as found by the recorder, showing, since his conviction and before the hearing, a course of continued and repeated disorderly conduct on part of defendant in the city of Durham, including two violations of the criminal law (neither of these, however, being for unlawfully selling liquor); and the record on the hearing before the recorder then continues: "That the conduct of the defendant has been subversive of good morals. That the defendant has not been of good behavior since 31 December, 1913, and has violated the terms and conditions upon which said judgment was suspended. Whereupon the judgment of the court being prayed, it is ordered, considered, and adjudged that the defendant be sentenced to serve a term of six months in the common jail of Durham County, to be assigned to work on the public roads of Durham County."

From this judgment defendant appealed to the Superior Court and, on such appeal, insisted:

1. That defendant was entitled to a hearing *de novo* as to the original issue of guilt or innocence.

2. That the judge should hear evidence on the questions presented to the recorder's court at time sentence was imposed as to the behavior of defendant, and pass upon same.

3. That the Legislature could not confer upon the recorder's court jurisdiction of the offense.

The court being of opinion against the defendant, entered judgment that the sentence before the recorder's court be affirmed and defendant's appeal be dismissed.

And from this judgment defendant, having duly excepted, appealed to Supreme Court.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Bryant & Brogden for defendant.*

HOKE, J., after stating the case: The power of a court, having jurisdiction, to suspend judgment on conviction in a criminal case for determinate periods and for a reasonable length of time has been recognized and upheld in several decisions of our Court, as in *S. v. Everett,* 164. N. C., 399; *S. v. Hilton,* 151 N. C., 687; *S. v. Crook,* 115 N. C., pp. 760, etc., and we see no good reason why it should not be intrusted to the sound discretion of these municipal courts.

It may be well to note that, while it has been sanctioned in this State to a somewhat greater extent than it existed at common law, there has

been decided intimation given in some of the cases that the practice should not be hastily enlarged, as it may be susceptible of great abuse to the injury of the citizen. Thus, in *Hilton's case* the Court said: "In this State, as shown in *Crook's case, supra,* the power to suspend judgment and later impose sentence has been somewhat extended in its scope, so as to allow a suspension of judgment on payment of costs, or other reasonable condition, or continuing the prayer for judgment from term to term to afford defendant opportunity to pay the cost or make some compensation to the party injured, to be considered in the final sentence, or requiring him to appear from term to term, and for a reasonable period of time, and offer testimony to show good faith in some promise of reformation or continued obedience to the law. These latter instances of this method of procedure seem to be innovations upon the exercise of the power to suspend judgment as it existed at common law; and while they are well established with us by usage, the practice should not be readily or hastily enlarged or extended to occasions which might result in unusual punishment or unusual methods of administering the criminal law."

A perusal of these authorities will show further that this power to suspend judgment, in its origin and growth, has proceeded from a disposition to ameliorate the condition of defendant and that it has been upheld in its usual application only with his express or implied assent. This was directly recognized in *Everett's case* as follows: "Where a defendant submits or is convicted of a criminal offense and is present when the judge, in the exercise of his reasonable discretion, suspends judgment upon certain terms, and does not object thereto, he is deemed to have acquiesced therein, and may not subsequently be heard to complain thereof; and in proper instances it will be presumed that the court exercised such discretion."

And in *Hilton's case,* in reference to this position, the Court said: "And in more recent applications of the principle the better considered decisions are to the effect that the power indicated should only be upheld when sanctioned by usage and where the consent of the defendant was expressly given or would be implied from the fact that its evident purpose was to save defendant from a more grievous penalty, permitted or required by the law. And in *S. v. James Griffis,* 117 N. C., 709, in allowing an appeal from a justice's court because the judgment had been suspended without defendant's consent and so depriving him of his right to present matters making for his defense, *Avery, J.,* for the Court, said: "It is in order to preclude the possibility of such an infringement of individual right that the authority of the court on convictions to postpone the infliction of punishment has been conceded only when the defendant, either expressly assents or, being present, fails to object, and is therefore presumed to give his consent to the order."

The course, then, being only permissible with the consent of the defendant, when such assent appears, as it does in this case, it may properly be considered a waiver of his right of appeal on the principal issue of his guilt or innocence and of the right given by this statute in which a trial *de novo* is provided for; and the further consideration of the cause involves only the proper disposition of the right and propriety of imposing the suspended sentence. No appeal on this question having been provided by the statute, and there being nothing in the record to challenge the validity or propriety of the sentence, his Honor was clearly right in dismissing the appeal. It must not be supposed that in approving this position we hold or intend to hold that a defendant is without redress in case grievous or substantial wrong should be done in the proceedings subsequent to conviction. Both under our Constitution and statutes the writs of *certiorari, recordari,* and *supersedeas,* "as heretofore in use," have full vigor in this State (Constitution, Art. IV, sec. 8, and Revisal, sec. 584), and whenever a substantial wrong has been done in judicial proceedings, giving a litigant legal right to redress, and no appeal has been provided by law, or the appeal that is provided proves inadequate, the Supreme Court, under the constitutional provision, to all courts of the State and the Superior Courts of higher jurisdiction, by reason of the statute (and well sustained precedents), to all subordinate courts, over which they exercise appellate power, may issue one or more of these important writs and under it see that the error is corrected and justice duly administered. The principle in this jurisdiction applies to criminal as well as civil causes and enables our Superior Courts to supervise the judicial action of recorders, justices of the peace, and all courts, as stated, over which they are given appellate power. *S. v. Locke,* 86 N. C., 647; *S. v. Swepson,* 83 N. C., 585; *S. v. McGimsey,* 80 N. C., 377; *Brooks v. Morgan,* 27 N. C., pp. 481-485; 4 Pl. and Pr., 27-55; 12 Cyc., p. 794.

The remedy, therefore, for a legal wrong is ample, but, in its application by means of the writs referred to, the higher court acts only as a court of review, and in all ordinary instances must act on the facts as they appear of record, and, while in rare instances the appellate court, in the exercise of its discretion, may enlarge the scope of inquiry (4 Enc. Pl. and Pr., p. 257), there is nothing to justify such an exceptional course in this instance, and the rule is that they deal with the facts as they appear, and can only revise the proceedings as to their regularity or on questions of law or legal inference.

Speaking to this question of *certiorari* and this feature of its application, in *Brooks v. Morgan, supra,* Chief Justice *Ruffin* said: "It has often been used as a writ of false judgment to correct errors in convictions and judgments of justices of the peace out of court. But it is not

restricted even thus far; for at common law it is, as Mr. Chitty observes, 2 Genl. Pr., 374, "a legal maxim that all judicial proceedings of justices of the peace, upon which they have decided by conviction or order (such as an illegal order for turning the highway or the like), whether at general or special sessions, or individually, and either by general or particular statute, are of common right removable into the King's Bench by *certiorari*, unless that remedy has been expressly taken away by particular enactment." It is stated that even when a statute says that particular cases shall be finally determined in the quarter sessions, yet that does not oust the jurisdiction by *certiorari*, because the court understands therefrom that it was meant merely that the facts should not be reexamined. Therefore, although an appeal which is in the nature of a new trial on the facts and merits cannot be sustained, unless expressly given by statute, the Superior Court will always control inferior magistrates and tribunals, in matters for which a writ of error lies not, by *certiorari*, to bring up their judicial proceedings to be reviewed in the matter of law; for in such case "the *certiorari* is in effect a writ of error," as all that can be discussed in the court above are the form and sufficiency of the proceedings as they appear upon the face of them. The Superior Court, being our highest court of original jurisdiction, has always exercised the superintending control, which the King's Bench has in England, as far as necessary to the preservation of the common right of the citizen. Such a jurisdiction is indispensable in a free country, where the principle of arbitrary decision is not acknowledged, but the law is held to be the true and only standard of justice. It never could be intended by the Legislature that summary adjudications of justice out of court, or in session, should, however erroneous in point of law, conclude the citizen; and although the party affected by them may, perhaps, insist that they are void, and resist them *in pais,* or sue those who act under them, it is much better to allow him at once and directly to subject them to revision and reversal, if found to be against law. It was, doubtless, upon this ground that the principle came to be incorporated, as a maxim, into the common law of England. It is equally essential to the uniformity of decision, and the peaceful and regular administration of the law here, that there should be some mode for correcting the errors, in point of law, of proceedings not according to the course of the common law, where the law does not give an appeal; and, therefore, from necessity, we must retain this use of the *certiorari*."

In the case before us on the propriety of this sentence, the matter is necessarily and properly referred, in the first instance, to the legal discretion of the recorder, and, no appeal being provided for, the question would ordinarily become one for review by the Superior Court only in case the recorder would refuse to hear evidence on the subject, or, having

heard evidence, would commit manifest and gross abuse of discretion in imposing the sentence upon defendant, either because no violation of the condition had been shown or because the punishment was so severe as to be out of all reasonable proportion to the offense. And no such case is presented in this record. Here the recorder has heard the evidence, and without referring to his findings in detail we are all of opinion that they fully justify his conclusion that "defendant has not been of good behavior since December, 1913, and has violated the terms and conditions upon which said judgment was suspended." And there is nothing in the sentence imposed to permit or call for our interference as a matter of law.

On the record, therefore, we think his Honor was right in refusing to hear the evidence offered, and approve his ruling on defendant's second position.

The question as to the power of the recorder's court in the premises and the constitutionality of the acts conferring jurisdiction thereon has been ruled adversely to defendant's position in several decisions of this Court where it was directly presented, and may be regarded as no longer open to discussion. *S. v. Hyman,* 164 N. C., 411, and authorities cited.

There is no error, and the judgment dismissing defendant's appeal is Affirmed.