People of State of Illinois, Defendant in Error, v. John Collis (Impleaded), Plaintiff in Error.

Gen. No. 45,395.

Opinion filed November 5, 1951. Released for publication November 20, 1951.

GEORGE A. ASKOUNIS, of Chicago for plaintiff in error.

JOHN S. BOYLE, State's Attorney of Cook county, of Chicago, for defendant in error; JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR MANNING, and WILLIAM J. McGAH, JR., all of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

John Collis, together with three other men, was convicted in the criminal court of conspiracy to do bodily harm to one James Vail. Vail and Collis had been partners in a venture which involved the purchase of gold coins in Mexico and the sale of these coins in Europe. Some of the coins purchased were confiscated at the United States border by custom officials and a receipt therefor given to Vail. Collis sought to have Vail assign to him the receipt for these coins, but Vail insisted that he be paid for his services. Ultimately, on May 26, 1949, Vail was beaten in the home of Thomas Collis, another defendant, and there is evidence of his contention that he was forced to sign powers of attorney and an assignment of the receipt which he held. On trial the jury returned a verdict of guilty as to all of the defendants who were thereupon fined by the court and sentenced to jail. Subsequently they were all placed on probation conditioned upon the payment of the fines assessed against each of them. John Collis alone sued out a writ of error to review the verdict and the judgment of the court.

As the principal ground for reversal Collis contends that the State failed to prove that defendant partici-

pated in a conspiracy to assault Vail in order to procure the receipt for the coins.

The pertinent question presented is whether a defendant who has the choice of probation or of contesting the judgment of conviction, may accept the benefits of suspension under probation and later seek to take advantage of the alternative he has rejected. The State contends that the acceptance of probation, especially where requested by the defendant, amounts to a waiver of the right to institute error proceedings. The record pertaining to this phase of the controversy shows that on December 14, 1949 the jury returned a verdict of guilty; on January 4, 1950 Collis made a motion for a new trial, assigning thirteen specific reasons; on February 3, 1950 motions for a new trial and in arrest of judgment were overruled, and judgment was entered on the verdict finding defendant guilty of conspiracy in manner and form as charged in the indictment; on the same day Collis, by his counsel, made a motion to be released on probation; on April 3, 1950, after several continuances, the court entered an order releasing Collis on probation for a period of one year on condition that he pay a fine of $2,000 before the end of the probation period; at the same time he was released on his own recognizance of $500 and paid $50 in open court for costs of the proceeding; thereafter, on October 11, 1950, he filed a bill of exceptions and sued out his writ of error.

██ An annotation in 117 A. L. R. 929 contains a full discussion of the question presented. As a general rule, the voluntary acceptance of a suspended sentence, probation or parole waives the defendant's right to appeal. The reasons for this rule are well stated in *Brooks v. State* (1938), 20 Ariz. 183, 78 P. (2d) 498. In that case Brooks was convicted of grand larceny in November 1935 and thereafter, following the denial of his motion for a new trial, the court, acting upon

the recommendation of the jury that sentence be suspended, postponed the imposition thereof for a period of six years. Nothing further was done in the case until August 1937, when defendant was arraigned on an information charging him with the crime of purchasing junk from a minor, to which he entered a plea of not guilty. At the conclusion of the hearing the court decided that Brooks was guilty of the charge and that he had violated the terms and conditions of his probation, and thereupon sentenced him to the penitentiary for the crime of grand larceny of which he had previously been convicted in 1935. Brooks thereupon gave notice of appeal from the order overruling his motion for a new trial in 1935 and from the final judgment of conviction and sentence rendered in 1937. In dismissing the appeal the court said that when the imposition of sentence is suspended or postponed and the defendant accepts his freedom thereunder, he foregoes his right of appeal from a judgment that may be pronounced in the future on that conviction because the order of suspension confers benefits, not harm, upon him, and is inconsistent with an appeal based upon errors committed at the trial, whether that appeal is taken then or at some future time. ''Accepting the benefits of probation, therefore, instead of permitting the case to go to judgment at that time and appealing from it, estops him from bringing the errors committed at the trial to this court for review. His choice between the benefits of suspension and contesting the case further is final, hence, he cannot thereafter reverse his stand and take advantage of the alternative he had theretofore rejected. By choosing probation he is automatically estopped from appealing and by deciding in favor of appeal he estops himself from benefitting from suspension.''

In *State v. Goddard* (1913), 69 Ore. 73 (Abst.), 133 Pac. 90, defendant was indicted for the crime of rape, and upon trial was convicted by a jury which recommended him to the mercy of the court. He was thereupon sentenced to the penitentiary for twenty years and in the same judgment order paroled under conditions so rigid that the reviewing court characterized them as "semi-imprisonment." There was nothing in the record to indicate that defendant requested parole or accepted its benefits, as in the case at bar. Defendant appealed from the judgment, and a motion was made in the reviewing court to dismiss the appeal on the ground that by accepting parole he had waived his right of appeal. After stating the facts the court observed that "beyond the fact that the defendant has not attempted to break into the penitentiary vi et armis, there is nothing to indicate that he has accepted the parole. It was made a part of the judgment, and its conditions in themselves constitute a semi-imprisonment." The court thereupon enumerated the rigorous provisions, and pointed out that "all these conditions constitute a very serious abridgment of the liberty of a citizen; and, until it is shown that he has accepted them affirmatively, we think that he should not be held to have waived his right of appeal. Had he affirmatively accepted the conditions imposed, a different question would arise; but, under the circumstances, he was inter canem et lupum. Had he accepted by matter of record the parole given him, he would probably have been held to have waived his right of appeal. Had he voluntarily insisted that he be received into the penitentiary, his request would probably have been refused, and the fact that he had so insisted might with equal plausibility have been urged as a waiver of his right of appeal." The court observed that to adopt the theory advanced by the Oklahoma

court in *Odom v. State* (1912) (Okla. Crim.), 129 Pac. 445, would place it in the power of any judge to prevent an appeal by placing the prisoner on probation, and concluded by saying that "so long as appeals are permitted at all, the right to appeal should be open to any one who does not waive it by some affirmative act."

In the case at bar the record clearly indicates that Collis requested probation. He assented to the suspension of sentence by entering into a recognizance for his release pending the probation and paid the costs of the proceeding in open court after sentence was pronounced upon him. Presumably upon such a state of the record the Oregon court which passed on the *Goddard* case would have held, as did the Arizona court in the *Brooks* case, that the affirmative acceptance of probation would estop defendant from seeking a review.

In *Renado v. Lummus* (1910), 205 Mass. 155, 91 N. E. 144, it was held that where defendant, having been fined $10 and informed of his right to appeal, said that he did not wish to appeal but desired instead to avail himself of his statutory right to a suspension of sentence which was granted, his request for an appeal made six days later and at a subsequent sitting of the court, came too late, since he had waived his right of appeal by applying for and accepting the suspension of the sentence.

In *State ex rel. Sawyer v. Municipal Court of the City of Minneapolis* (1890), 43 Minn. 202, 45 N. W. 155, it was held that the defendant having stipulated to pay a $100 fine for violation of the liquor-license law, and having entered into an undertaking and accepted a stay of judgment, could not appeal. The court stated the reasons for its decision as follows:

"The defendant having gained the benefit of a stay of execution by means of his agreement to abide by the judgment, and for that purpose having expressly waived all objection thereto, is now precluded from asserting the contrary. It was competent for him to waive his right of appeal, or any objection that may have existed to the judgment. His action in the premises involved such a waiver, and he has not now the right to invoke a decision from this court as to the validity of the judgment."

Likewise in *State v. Tripp* (1914), 168 N. C. 150, 83 S. E. 630, where defendant was convicted of a criminal offense and being present in court was given a suspended sentence upon his execution of a bond for good behavior, it was held that since he consented to the suspension of the sentence he waived his right to appeal from the conviction.

The precise question has not been decided by any of the courts in this state, but the underlying principle was approved in *People v. Andrae* (1920), 295 Ill. 445, wherein it was held that since under section 2 of the Act providing for a system of probation (Hurd's Stat. 1917, p. 1049), a convicted person may be admitted to probation when "nothing remains to be done by the court except to pronounce sentence," the filing, after denial of a motion for a new trial, of a petition for release on probation, waives defendant's right to make a motion in arrest of judgment and is an admission that nothing remains to be done by the trial court except to pronounce sentence.

██ We think the foregoing decisions are founded on the sound doctrine that where a defendant moves for release on probation which is granted, affirmatively assents to the order and accepts the benefits of probation, his choice between the suspension and contesting the judgment of conviction should be final. He should not be permitted to reverse his stand and take

advantage of the alternative he had theretofore rejected.

For these reasons the judgment of the criminal court should be affirmed, and it is so ordered.

*Judgment affirmed.*

BURKE, P. J. and NIEMEYER, J., concur.