CAROLINA MOTOR SERVICE, INC., AND THE JOHN P. NUTT CORPORA-
TION v. ATLANTIC COAST LINE RAILROAD COMPANY; SOUTHERN
RAILWAY COMPANY; LEIGH R. POWELL, JR., AND HENRY W.
ANDERSON, RECEIVERS OF SEABOARD AIR LINE RAILWAY COM-
PANY; M. S. HAWKINS AND L. H. WINDHOLZ, RECEIVERS OF NOR-
FOLK SOUTHERN RAILROAD COMPANY; AND STANLEY WIN-
BORNE, UTILITIES COMMISSIONER OF NORTH CAROLINA.

(Filed 29 April, 1936.)

1. **Carriers B b: Injunctions A b—Carriers by truck held not entitled to enjoin promulgation of lower rates by rail.**

Plaintiffs, carriers by truck, instituted this action against certain rail-road companies and the Utilities Commissioner to enjoin the promulgation of lower rates on a certain product by defendant carriers and the acceptance of such rates by the Utilities Commissioner, in shipments from a designated terminal to other points within the State, alleging that the rates were unjustly discriminatory against other products over the same route and against products shipped from other terminals in the State, in violation of N. C. Code, 1112 (1), *et seq.*, and that such reduction in rates would tend to injure plaintiffs in their business of hauling the product in question by contract with shippers. *Held:* Plaintiffs allege no invasion of property rights entitling them to injunctive relief, since the alleged discrimination against other products over the same route and against other terminals in the State would injure shippers having such other products for shipment over the same route and shippers having products for shipment from such other terminals, and would invade no property rights of plaintiffs, and since the alleged prospective injury to plaintiffs' business is by way of fair competition, against which the law does not protect, such injury being *damnum absque injuria,* defendant carriers being entitled to reduce their rates at will under ch. 134, sec. 16, Public Laws of 1933.

2. **Monopolies C b: Injunctions B e—Injunction held not to lie to enjoin violation of criminal statute against monopolies.**

Plaintiffs alleged that defendant carriers by rail were seeking to lower freight rates on a certain product in intrastate commerce with the intent to drive plaintiffs, carriers by truck, out of business, and then to raise rates after competition by plaintiffs had been destroyed, all in violation of

C. S., 2563. On the facts alleged, plaintiffs sought to enjoin the promulgation of the contemplated lower rates. *Held:* While the facts alleged constitute a violation of C. S., 2563, such violation is made criminal by C. S., 2564, and judgment dissolving the temporary restraining order obtained by plaintiffs and dismissing the action is proper, plaintiffs' remedy for a violation of the statute being by indictment and prosecution under the provisions of C. S., 395 (2), since, ordinarily, the violation of a criminal statute may not be enjoined.

APPEAL by the plaintiffs from *Harris, J.,* resident in the Seventh Judicial District, on 21 March, 1936. From WAKE. Affirmed.

This is an action, instituted by certain contract truck carriers engaged in the transportation of gasoline and kerosene in intrastate commerce from the terminal port at Wilmington, N. C., to certain points in North Carolina, against certain railroad companies and the Utilities Commissioner, seeking to enjoin the railroad companies from putting into effect (and the Utilities Commissioner from accepting) certain proposed reduced rates for intrastate transportation in carload lots of gasoline and kerosene between Wilmington and interior points in North Carolina, for the reason that said proposed rates are discriminatory and monopolistic, and are sought to be put into effect by the railroad companies to injure and destroy the business of the plaintiffs.

Upon the return of the temporary restraining order the court declined to sign judgment tendered by the plaintiffs continuing the restraining order until the Utilities Commissioner could pass upon the legality of the proposed rates, or to the final hearing, and entered judgment dissolving the restraining order and dismissing the action. From this judgment the plaintiffs appealed, assigning errors.

*Kenneth C. Royall and Robert A. Hovis for plaintiffs, appellants.*

*R. B. Gwathmey, James F. Wright, W. N. McGehee, Smith, Leach & Anderson, and Murray Allen for defendants, appellees.*

*W. B. Rodman and Simms & Simms for Receivers of Norfolk Southern Railroad Company, appellees.*

SCHENCK, J. The plaintiffs are contract truck carriers engaged in the transportation of gasoline and kerosene in intrastate commerce from the terminal port of Wilmington to certain interior points in North Carolina, and operating independently of public utility regulations. They contend that they are entitled to have enjoined the promulgation and the putting into effect of the proposed rates for two reasons, first, such rates are unjustly discriminatory and in violation of chapter 307, Public Laws of 1933, N. C. Code of 1935 (Michie), sec. 1112 (1) to (36), commonly known as the Public Utilities Act, and, second, such rates are in violation of chapter 53, Consolidated Statutes, entitled Monopolies and Trusts.

Plaintiffs allege and offer evidence tending to prove that the proposed rates discriminate against (1) crude oil transportation from Wilmington to the same points involved, (2) other commodities transported on basic or standard rates, (3) all other commodities transported by the railroad companies by causing added burdens to the cost of transportation, (4) transportation of gasoline and kerosene from points other than Wilmington, such as Fayetteville, a port terminal, and from places with long established distance proportion rates.

There is neither allegation nor proof that the plaintiffs have crude oil for transportation from Wilmington to other points, or other commodities for transportation on basic or standard rates, or that they have any commodity for transportation upon which added burdens of cost will be placed, or that they have any gasoline or kerosene for transportation from Fayetteville, or from any points with long established proportion rates, or that the plaintiffs have any commodity whatsoever for transportation from any point. Hence, there could be no invasion of any property rights of the plaintiffs by the promulgation and putting into effect the proposed rates.

While plaintiffs have the legal right to solicit and, if they can, to obtain contracts to transport gasoline and kerosene from Wilmington, they have no legal right to have their contract price protected against lawful competition from rail carriers, who may now reduce their rates at will. Public Laws 1933, ch. 134, sec. 16. The price at which the plaintiffs transport gasoline and kerosene is fixed solely by private contracts between them and the shippers, and until these contracts are made they are not cognizable by the courts, and only then when differences arise between the parties thereto. In the event the proposed rates are promulgated and put into effect, there would be no interference with the right of plaintiffs to contract with shippers for the transportation of gasoline and kerosene from Wilmington to other points. Their right to contract for transportation would remain unimpaired. They could continue, as they do now, to contract to transport gasoline and kerosene from Wilmington to other points at such prices as may be agreed upon by them and the shippers.

If it be conceded that the proposed reduced rates would be discriminatory against certain cities and against certain commodities, and that the right to injunctive relief would lie, such right would lie in the shippers in those cities and in the shippers of those commodities, and not in transportation companies operating independently of the Public Utilities Act, since the basis for injunctive relief must be an interference or. threatened interference with a legal right of the petitioner, not of a third party. The shippers would be the real parties in interest, C. S., 446, not the contract truck carriers.

It would seem that any loss that the plaintiffs may suffer by the defendants' acts in the premises would be the result of lawful competition, and the law does not protect one against lawful competition. Disturbance or loss resulting therefrom is *damnum absque injuria*. *Swain v. Johnson,* 151 N. C., 93; *Holder v. Bank,* 208 N. C., 38.

Plaintiffs further allege and offer evidence tending to prove that if the defendant carriers are permitted to promulgate and put in effect the proposed rates their actions would be in restraint of trade and contrary to our laws against monopolies, and in violation particularly of C. S., 2563, in that they would (1) willfully destroy or injure, or undertake to destroy and injure, the business of the plaintiffs, opponents and business rivals of the defendant carriers, with the intent to fix rates when competition was removed; (2) willfully injure and destroy, or undertake to injure or destroy, the business of the plaintiffs by lowering the price of transportation, a "thing of value," so low as to leave unreasonable or inadequate profit for a time, with the purpose of increasing the price when the plaintiffs are driven out of business; (3) willfully sell such transportation at a place where there was competition, Wilmington, at a price lower than is charged for the same service at other places, when there was not good and sufficient reason, on account of the expense of doing business, for charging less at one place than at others, with the view to injuring the business of the plaintiffs, business rivals of the defendant carriers.

While C. S., 2563, declares that all of the above mentioned acts are unlawful, the following section, C. S., 2564, further provides that "Any corporation, either as agent or principal, violating any of the provisions of the preceding section shall be guilty of a misdemeanor, and such corporation shall, upon conviction, be fined not less than one thousand dollars for each and every offense," and that the officers of any corporation violating said provisions, "upon conviction, shall be fined or imprisoned, or both, in the discretion of the court." This statute clearly makes the alleged acts of the defendant carriers complained of by the plaintiffs criminal, and it is the rule with us, subject to certain exceptions that do not here apply, that "there is no equitable jurisdiction to enjoin the commission of a crime," *Hargett v. Bell,* 134 N. C., 394, and that injunctions are "confined to cases where some private right is a subject of controversy." *Patterson v. Hubbs,* 65 N. C., 119; 1 High on Injunctions (4 Ed.), ch. 1, sec. 20.

Individuals who apprehend injury to their person or property by reason of any acts which are criminal are furnished an adequate remedy at law, by having the perpetrator of such acts indicted and prosecuted by the State. Provision for such prosecution is contemplated by C. S., 395 (2). Drastic punishment, well calculated to deter, is provided for

the alleged acts of the defendant carriers complained of by the plaintiffs. However, in this connection, it should be observed that while in considering simply the question as to whether equitable relief of injunction will lie, the averments in the petition are regarded as true, it is not intended to intimate an opinion upon the guilt of the defendant carriers of the charges made against them by the plaintiffs. This issue will be passed upon only when properly presented.

We hold that since the plaintiffs fail to allege or prove that any property or legal rights vested in them would be invaded or illegally interfered with by the promulgation and putting into effect of the proposed rates, and since any alleged monopolistic acts of which the defendants may be guilty appear to be criminal offenses, his Honor ruled properly in both dissolving the restraining order and in dismissing the action.

Affirmed.