BURKE TRANSIT COMPANY v. QUEEN CITY COACH COMPANY, HARRY HOWARD, JOE RILEY, FRED HARRISON AND HOWARD HICE.

(Filed 14 April, 1948.)

**1. Injunctions §§ 2, 4i—**

Equity may enjoin libelous or slanderous statements affecting plaintiff's business, even where no breach of trust or contract is involved, when irreparable and continuing injury is alleged and it appears that injunction pending final determination of the action is necessary for protection of plaintiff's business or property rights.

**2. Injunctions § 4g, 4i—**

The fact that the unfair practices complained of are made criminal offenses by statute, G. S., 75-1; G. S., 75-5, does not preclude a common carrier whose franchise rights have been injured and threatened by the

wrongful acts, from instituting civil action for damages and obtaining injunctive relief to prevent irreparable injury pending final determination of the action.

**3. Injunctions § 2: Utilities Commission § 2—Injunction will lie where adequate remedy is not obtainable through administrative agency.**

Plaintiff instituted this action for damages to recover for alleged wrongful acts of defendants in making slanderous statements affecting plaintiff's business as a common carrier, in operating unscheduled buses over common routes, and in transporting passengers at less than the established rates or free of charge, pursuant to a conspiracy to injure and destroy plaintiff's business. Plaintiff sought injunctive relief pending determination of the action upon allegations of irreparable injury. *Held:* The temporary restraining order was properly continued to the hearing in so far as it related to the circulation of false statements, since the Utilities Commission is without authority to grant adequate relief in regard thereto, but plaintiff's remedy relating to operating schedules and fares is peculiarly within the power of the Utilities Commission and is not subject to injunctive relief by the courts.

ERVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Warlick, J.,* 6 December, 1947. From BURKE. Modified and affirmed.

This was a suit to restrain certain acts on the part of the defendants which it was alleged were being committed and threatened with wrongful purpose of injuring and destroying plaintiff's business. It was heard below pursuant to an order to show cause why a restraining order should not issue pending the action.

It was alleged in the complaint that the plaintiff has been since 1941 and is now engaged in operating motor buses for the transportation of passengers over eighteen regular routes in Burke and Avery Counties. The operation over twelve of these routes is under franchise certificates from the North Carolina Utilities Commission, one under contract with Atlantic Greyhound Corporation, and five under contract with the corporate defendant, approved by the Utilities Commission. Plaintiff's operations under these contracts extend over a portion of U. S. Highway 70 and North Carolina Highway 114. Plaintiff is also the owner of franchises from Morganton, Glen Alpine, Drexel and Valdese. Plaintiff's business serves local transportation needs within the territory reached by these routes, and affords to the general public means of transportation by convenient and regular schedules to and from manufacturing plants, stores and schools. Essential to this service is permission to engage in the transportation of passengers over a portion of Highway 70, between Rutherford College Road on the east and Tip Top Service Station on the west, and over Highway 114. It is also essential to plaintiff's success and to the continuance of the public service it renders that

patrons should have faith in the permanence of the service now being rendered.

The corporate defendant is engaged as a motor carrier of passengers under intrastate and interstate franchises on various highways in this and other states, but holds no franchise covering any of plaintiff's routes except over Highways 70 and 114. The other defendants are associated with the corporate defendant in the operation of buses over its routes.

It was alleged that the defendants have conspired together to injure and destroy the plaintiff's business and have undertaken to carry out their design of driving plaintiff out of the business of transporting passengers in order to gain a monopoly of transportation in the communities served by plaintiff, and for the purpose of enabling defendants to charge exorbitant prices for transportation when plaintiff shall have been eliminated. Pursuant to this design defendants have persistently and systematically sought to persuade and induce patrons of plaintiff and the public in this territory to refrain from patronizing plaintiff by making and circulating false statements to the effect that plaintiff is unreliable, is in failing financial condition, and intends to go out of business; that the corporate defendant is going to "bust" the plaintiff and drive it out of business, even if it has to operate at a loss in Burke County, and that defendant will take over the transportation of industrial workers, shoppers and school children now riding on plaintiff's buses. It was further alleged that defendants have undertaken to destroy plaintiff's business by operating buses on portions of No. 70 and No. 114 immediately ahead of plaintiff's buses which operate on well-known and regular schedules, and by soliciting persons awaiting transportation by plaintiff at plaintiff's regular stops to ride on defendants' buses, either on tickets purchased from plaintiff or at rates below the established tariffs of plaintiff and defendant, or free of charge; and that defendant is operating many buses upon unscheduled runs over portions of the highways mentioned and soliciting persons awaiting transportation by plaintiff at regular stops. It is alleged that these acts were done with intent to injure and destroy plaintiff's business and not for any legitimate purpose of defendants, and that thereby defendants have injured and damaged plaintiff's property rights, and have caused loss in patronage and increased expense, and that plaintiff has been damaged thereby in the sum of $15,000. It is also alleged that defendants are intending and threatening to induce plaintiff's patrons and the public in Burke and Avery Counties to boycott plaintiff's business. It is further alleged that defendants have, in pursuance of this unlawful purpose, injured plaintiff's business by operating buses upon routes over which plaintiff holds exclusive franchise from the N. C. Utilities Commission, to wit, route over Highway No. 181.

It is alleged that by these acts done and threatened defendants will thereby irreparably injure and destroy plaintiff's business and the value

of its corporate rights and its franchise and contract rights, unless restrained.

At the hearing before the judge below the plaintiff offered affidavits in support of the allegations of the complaint, which was used as an affidavit, and defendants also offered affidavits *contra,* and in denial of any conspiracy or wrongful acts to the injury of plaintiff.

The restraining order as modified was continued to the final hearing, restraining the defendants from doing the following acts:

"(1) Making and circulating statements to the effect that the plaintiff is an unreliable concern, or to the effect that the plaintiff is in failing financial circumstances, or statements to the effect that the plaintiff intends ·to go out of business, or statements to the effect that the defendant Queen City Coach Company is going to 'bust' the plaintiff and drive the plaintiff out of business, even if the defendant Queen City Coach Company has to operate at a loss in Burke County, or statements to the effect that the defendant Queen City Coach Company is going to take over all of the franchises and franchise certificates of the plaintiff, or statements to the effect that the defendant Queen City Coach Company is going to transport all of the industrial workers, shoppers, school children, and other persons now riding upon the motor buses of the plaintiff the Burke Transit Company.

"(2) Operating motor buses belonging to the defendant the Queen City Coach Company upon the portions of U. S. Highway #70, between the junction of said highway with the Rutherford College Road on the east and Tip Top Service Station on the west, and upon State Highway #114, upon unscheduled runs: Provided, however, that nothing contained in this section shall be construed to prohibit the defendants from operating special charter buses upon said portions of said highways, or from operating more than one bus upon scheduled runs.

"(3) .Transporting or soliciting persons for transportation at rates below the established rates of the defendant Queen City Coach Company, or free of charge, upon the portions of U. S. Highway #70 between the junction of said highway with the Rutherford College Road on the east and Tip Top Service Station on the west, and upon State Highway #114: Provided, however, that nothing contained herein shall be construed to prohibit the transportation of persons upon passes duly and regularly issued in accordance with the regulations of the North Carolina Utilities Commission; Provided, further, that nothing herein contained shall be construed to apply to special charter trips.

"(4) From transporting, or soliciting for transportation, any intrastate passengers at any point on State Highway #181 between the Town of Morganton, in Burke County, and the Town of Pineola, in Avery County."

Defendants excepted and appealed.

*J. E. Butler for plaintiff, appellee.*

*Shearon Harris, Frank C. Patton, and Robinson & Jones for defendants, appellants.*

DEVIN, J. The defendants' appeal presents the question of the sufficiency of the evidence offered to justify the issuance of a temporary restraining order pending the trial of the action.

The defendants base their objection to the order entered below principally on three grounds which we will consider *seriatim.*

1. It is contended that the equitable remedy by injunction should not be invoked to restrain alleged slanderous statements affecting plaintiff's business, but that plaintiff should be left to its remedy at law. Undoubtedly the general rule is that where no breach of trust or contract appears equity will not enjoin libelous or slanderous statements even when injurious to complainant's business or property. But where it appears necessary for the protection of plaintiff's business and property rights, and it is alleged that the systematic circulation of false statements seriously affecting these rights will work irreparable and continuing injury, injunction relief may be granted pending final determination of the action. *Lawrence Trust Co. v. Sun-Am. Pub. Co.,* 245 Mass., 262; 28 A. J., 312; 43 C. J. S., 681.

2. It is argued by defendant that the complaint in effect charges the criminal offense denounced by the statute, G. S., 75-1, for that it is alleged that defendants have conspired to injure and destroy plaintiff's competitive business, with the purpose of attempting to fix the price after competition is removed, in violation of G. S., 75-5, and that equity will not enjoin the commission of a crime, since the remedy is by indictment.

It was declared in *Hargett v. Bell,* 134 N. C., 394, 46 S. E., 749, that "there is no equitable jurisdiction to enjoin the commission of a crime," but this was said with reference to a suit in equity to enjoin the sale of spirituous liquors. It was also said in that case that injunction is "confined to cases where some private right is a subject of controversy." *Patterson v. Hubbs,* 65 N. C., 119; *Motor Service v. R. R.,* 210 N. C., 36, 185 S. E., 479. Wrongful acts, which may also be criminal, but which threaten injury to private property rights may invoke the aid of equity to prevent irreparable loss. The power of the courts to enjoin wrongful and injurious acts is not divested because such acts may also be in violation of the criminal law. "Injunction will issue to inhibit a criminal act when the act invades civil or property rights and where there is no other adequate remedy available." 43 C. J. S., 762; 28 A. J.,

339. Particularly is this so where a public service is involved. McIntosh, 978. When the enforcement of criminal law is merely incidental to the general relief sought in equity it is well settled that a court of equity may grant relief by injunction. *Barrett v. Fritz,* 316 Ill. App., 417. While conspiracies in restraint of trade, and undertakings to destroy or injure the business of a competitor, with purpose of attempting to fix the price when competition is removed, are made unlawful (G. S., 75-5 (3)), these provisions do not prevent one whose business as a common carrier has been injured and threatened by any of the acts thus denounced from pursuing a remedy by civil action for damages and seeking the interposition of equity, if necessary to restrain wrongful acts which threaten irreparable loss. Said *Justice Brown* in *Town of Roper v. Leary,* 171 N. C., 35, 87 S. E., 945, "Both remedies may be available." See also *Orloff v. Los Angeles Turf Club,* 171 A. L. R., 913.

3. Can the plaintiff have adequate and complete remedy from the North Carolina Utilities Commission?

Under the statutes the North Carolina Utilities Commission is vested with power and authority to supervise and regulate motor vehicle carriers (G. S., 62-109), and to grant franchise certificates, and to make and enforce regulations and restrictions as to fares, schedules, speed, and the ordinary transactions between carriers as to territory. *Utilities Com. v. Trucking Co.,* 223 N. C., 687, 28 S. E. (2d), 201; *Utilities Com. v. Coach Co.,* 224 N. C., 390, 30 S. E. (2d), 328. It is also made the duty of the Commission to investigate any complaint that any licensed operator is engaged in violating provisions of the act or any rule or regulation prescribed by the Commission or the laws of the State with respect to rights, duties and privileges of carriers. G. S., 62-110. And if a franchise carrier is engaged in practices violative of the terms of the franchise or the rules and regulations the Commission may order suspension of such practices. G. S., 62-110. And the franchise certificate may be canceled "for failure to observe and comply with schedules and tariffs approved by the Commission." G. S., 62-111 (7).

The present action, in so far as its purpose is to recover damages for injuries sustained and to restrain continuation of the wrongful acts alleged in respect to the making and circulating of false statements as to plaintiff's business, undoubtedly presents matters beyond the power or jurisdiction of the Utilities Commission to afford adequate remedy. However, in view of the comprehensive nature of the statutes creating and empowering the Utilities Commission, particularly in respect to the schedules and operation of motor buses on the highways and the fares charged for transportation of passengers, it would seem the plaintiff has ample remedy for its protection in those respects by complaint to the agency which the State has created for that purpose.

RIGGS v. OIL CORP.

It would seem therefore that the matters complained of relating to operating schedules and fares charged by the defendant for transportation on its buses are peculiarly within the power of the Utilities Commission to remedy, upon complaint made, and are not properly subjects which would call for the interposition of a court of equity, or invoke its equitable jurisdiction. *Coach Co. v. Transit Co.*, 227 N. C., 391, 42 S. E. (2d), 398; *Motor Service Co. v. R. R.*, 210 N. C., 36, 185 S. E., 479.

Hence the order issued below should be modified by removing from the restraint thereby enjoined matters relating to schedules and fares on the highways over which the defendants hold franchise certificates.

As thus modified the order appealed from is affirmed.

Modified and affirmed.

ERVIN, J., took no part in the consideration or decision of this case.