CITY OF WINSTON-SALEM v. WINSTON-SALEM CITY COACH LINES, INC.

(Filed 12 December, 1956.)

**1. Appeal and Error §§ 3, 16—**

A defendant is authorized to file petition for writ of *certiorari* to an order overruling demurrer when, in its opinion, the order will prejudicially affect a substantial right to which it is entitled unless the ruling of the court is reviewed on appeal prior to the trial of the cause on its merits. Rule of Practice in the Supreme Court No. 4 (a).

**2. Appeal and Error § 16—**

Where *certiorari* is allowed to review an order overruling defendant's demurrer, the writ does not eliminate the necessity for the preservation of exceptions, entered in the court below, bearing on the question or questions sought to be reviewed, but the allowance of the writ constitutes an exception to the judgment, presenting for review errors of law appearing on the face of the record.

**3. Carriers § 5: Utilities Commission § 2—Utilities Commission has exclusive original jurisdiction of dispute as to curtailment of services by intra-city bus carrier.**

Where a municipality has granted a franchise to a utilities company to operate passenger buses over its streets, the parties may mutually agree upon extensions and services, changes in routes, or curtailment of services, when in the opinion of the governing board of the municipality such changes are, under the existing conditions, for the best interest of all concerned, including the public. However, when the parties are unable to agree to a proposed curtailment of existing services, the matter is within the exclusive jurisdiction of the Utilities Commission, G.S. 62-121.47(h), and the municipality may not enjoin the utility from proposed curtailment of services, although the utility may not change its schedules or curtail its services unless given authority to do so by the Utilities Commission.

JOHNSON, J., not sitting.

CERTIORARI allowed upon petition of the defendant to review the order of *Johnston, J.*, overruling the demurrer to plaintiff's complaint, at Chambers in Winston-Salem, North Carolina, 21 July 1956. From FORSYTH.

This proceeding was instituted in the Superior Court of Forsyth County by the City of Winston-Salem on 10 July 1956 to restrain the defendant Coach Lines from putting into effect on 22 July 1956 a proposed schedule which would have substantially curtailed bus service within the corporate limits of the City of Winston-Salem and which included the elimination of all bus service by the defendant company at night and on Sundays.

The defendant's letter addressed to the Chairman of the Public Safety Committee of the Board of Aldermen of the City of Winston-Salem was dated 19 June 1956 and, among other things, stated that copies of the schedules which the defendant proposed to put into effect on 22 July 1956 were enclosed. The letter also contained the following statement: "Unless we are advised to the contrary, we will assume that these schedules meet with the approval of your Committee."

The defendant demurred to the complaint on the ground that the Superior Court is without jurisdiction of the controversy between the plaintiff and the defendant for that the North Carolina Utilities Commission (hereinafter called Utilities Commission) has exclusive jurisdiction thereof.

His Honor Frank M. Armstrong, presiding over the regular July Term 1956 of the Superior Court of Forsyth County, on 10 July 1956 issued an order directing the defendant to appear before the Honorable Walter E. Johnston, Jr., Resident Judge of the Twenty-first Judicial District, at Chambers in the Forsyth County Courthouse, at 10:00 a.m., Saturday morning, 21 July 1956, and show cause, if any it may have,

why an order should not be entered by the court, restraining the defendants, its officers, agents and employees from putting into effect its proposed schedule of routes and trips intended to take effect on 22 July 1956; and further restraining the defendant, its officers, agents and employees from curtailing its service to the traveling public of the City of Winston-Salem and from discontinuing any portion thereof.

This matter was heard before Judge Johnston at the time and place scheduled. His Honor, after considering the verified complaint, the demurrer, the written briefs filed by both parties, and the argument of counsel, entered an order overruling the demurrer, granting the defendant thirty days in which to answer, and restraining the defendants, its officers, agents and employees from putting into effect its proposed schedules.

The defendant excepted to the order and filed a petition for writ of *certiorari* pursuant to the provisions of Rule 4(a), Rules of Practice in the Supreme Court, 242 N.C. 766. We allowed the petition.

*Womble, Carlyle, Sandridge & Rice, attorneys for City of Winston-Salem.*

*Lassiter, Moore & Van Allen and Weston P. Hatfield, attorneys for petitioner Coach Lines.*

*Attorney-General Patton, Asst. Attorney-General Paylor, Amicus Curiae, for the State.*

DENNY, J. The defendant was authorized to file the petition for a writ of *certiorari* pursuant to the provisions of the above Rule, if the order overruling its demurrer, in its opinion, will prejudicially affect a substantial right to which it is entitled unless the ruling of the court is reviewed on appeal prior to the trial of the cause on its merits. Such writ was allowed by the Court in its discretion. Ordinarily, such writ will not eliminate the necessity for the preservation of exceptions, entered in the court below, bearing on the question or questions sought to be reviewed. The allowance of the writ, however, like an appeal, constitutes an exception to the judgment, and the Court may review errors of law appearing on the face of the record proper.

It appears from the complaint that the defendant is a corporation duly created, organized and existing under the laws of North Carolina, with its principal office in the City of Winston-Salem; that it is engaged in transporting passengers for hire by bus over the streets of said City for a stipulated fare, and was incorporated for the purpose of taking over the bus business formerly operated in the City of Winston-Salem for many years by Duke Power Company. That under date of 9 May 1955, the plaintiff and the defendant entered into an agreement in the

form of a franchise ordinance, duly adopted by the Board of Aldermen of the City of Winston-Salem, which in pertinent part reads as follows:

> "*Section 2.* The Company is hereby given and granted a non-exclusive and non-transferable franchise to engage in the business of furnishing bus passenger transportation service to the public over the streets and highways of the City along the routes now assigned to Duke Power Company, with such additions thereto and deletions therefrom as may be hereafter adopted . . .

> "*Section 3.* During the term of the franchise hereby granted, the Company shall maintain such schedules and will otherwise render such bus transportation service over the routes assigned to it in accordance with the foregoing provisions as will meet the reasonable needs of the public. All controversies with respect to extensions and services shall be determined by The North Carolina Utilities Commission . . ."

It appears from the record, however, that prior to the institution of this action the Board of Aldermen of the City of Winston-Salem adopted a resolution which purports to delete from the franchise ordinance or contract, the provision that "All controversies with respect to extensions and services shall be determined by The North Carolina Utilities Commission . . ."

The appellee concedes that decision in this case turns upon the correct interpretation of G.S. 62-121.47. This statute exempts from regulation eight classes of services, to wit: "(a) transportation of passengers for or under the control of the United States government, or the State of North Carolina, or any political subdivision thereof, or any board, department or commission of the State, or any institution owned and supported by the State; (b) transportation of passengers by taxicabs or other motor vehicles performing *bona fide* taxicab service and carrying not more than six passengers in a single vehicle at the same time and not operated on a regular route or between fixed termini; provided, no taxicab while operating over the regular route of a common carrier outside of a town or municipality and a residential and commercial zone adjacent thereto, as such zone may be determined by the Commission as provided in (h) of this paragraph, shall solicit passengers along such route, but nothing herein shall be construed to prohibit a taxicab operator from picking up passengers along such route upon call, sign or signal from prospective passengers; (c) transportation by motor vehicles owned or operated by or on behalf of hotels while used exclusively for the transportation of hotel patronage between hotels and local railroad or other common carrier stations; (d) transportation of passengers to and from airports and passenger airline terminals when

such transportation is incidental to transportation by aircraft; (e) transportation of passengers by trolley buses operated by electric power derived from a fixed overhead wire, furnishing local passenger transportation similar to street railway service; (f) transportation by motor vehicles used exclusively for the transportation of passengers to or from religious services; (g) transportation of *bona fide* employees of an industrial plant to and from their regular employment; (h) transportation of passengers when the movement is within a town or municipality exclusively, or within contiguous towns or municipalities and within a residential and commercial zone adjacent to and a part of such town or municipality or contiguous towns or municipalities; provided, the Commission shall have power in its discretion, in any particular case, to fix the limits of any such zone.

"The Commission shall have and retain jurisdiction to fix rates and charges of carriers operating under (e) and (h) of this subsection, and shall have jurisdiction to hear and determine controversies with respect to extensions and services, and the Commission's rules of practice shall include appropriate provisions for bringing such controversies before the Commission and for the hearing and determination of the same. . . ."

Notwithstanding the above concession on the part of the appellee, it contends that the controversy in this case is not "with respect to extensions and services," but relates solely to a threatened breach by the defendant of its contract with the City of Winston-Salem, by which the defendant will substantially curtail the services which it specifically agreed to furnish.

The defendant, in its letter of 19 June 1956, referred to above, pointed out that it had protested the heavy inroads into its traffic by so-called "Suburban" bus lines which are openly providing rides wholly within the city limits along the few routes which could be profitable to the defendant. That, in spite of a substantial doubt that these carriers were ever intended by the Board of Aldermen to carry passengers wholly within the City, the Board of Aldermen has not seen fit to protect it from this destructive practice. That these carriers operate only during the hours while travel is heavy, while the defendant operates its buses 18 hours daily. The letter further states, "We have continued to suffer monthly recurring losses while trying to offer the high level service which we have been operating. It is apparent that we must either expand our routes into the areas where traffic is available to us or balance our expenses and income by adjusting the volume of our service."

Any provisions with respect to rates and services contained in a franchise contract between a utilities company and a municipal corporation, authorizing the utilities company to transport passengers over

its streets, are subject to the orders of the Utilities Commission in respect thereto. G.S. 62-121.47; G.S. 62-122(1); *In re Southern Public Utilities Co.*, 179 N.C. 151, 101 S.E. 619; *Utilities Commission v. Greensboro*, 244 N.C. 247, 93 S.E. 2d 151.

It makes no difference whether the provision in the franchise to the effect that, "All controversies with respect to extensions and services shall be determined by The North Carolina Utilities Commission," has or has not been deleted therefrom. The Utilities Commission is vested by law with jurisdiction of such controversies. G.S. 62-121.47(1). This does not mean, however, that the officials of a municipality and one to whom a municipality has granted a franchise to operate passenger buses over its streets, may not mutually agree upon extensions and services, changes in routes, or curtailment of services when in the opinion of the governing board of the municipality it is, under the existing conditions and circumstances, for the best interest of all concerned, including the public, to approve such extensions, changes in routes or the curtailment of existing services. It is only when the parties to such controversies are unable to reach an amicable agreement that the Utilities Commission, and not the courts, is the proper forum to hear and determine such controversies. However, no change in fares or rates may be made except in the manner prescribed by statute. *In re Southern Public Utilities Co., supra.* Controversies in regard to schedules, rates, extensions and services, changes in routes, or curtailment of existing services, are within the power of the Utilities Commission to remedy, upon complaint being made, and are not proper subjects for injunctive or other equitable relief by the courts. *Transit Co. v. Coach Co.*, 228 N.C. 768, 47 S.E. 2d 297; *City Coach Co. v. Transit Co.*, 227 N.C. 391, 42 S.E. 2d 398; *Warren v. R. R.*, 223 N.C. 843, 28 S.E. 2d 505; *Carolina Motor Service v. R. R.*, 210 N.C. 36, 185 S.E. 479, 104 A.L.R. 1165.

We interpret G.S. 62-121.47(1) to mean that the Utilities Commission is not vested with power to require the operators of services enumerated therein to obtain a franchise from it and does not have any supervision or jurisdiction over such operation, except the operations set forth in subsections (e) and (h), and as to them it retains "jurisdiction to fix rates and charges," and "to hear and determine controversies with respect to extensions and services." *Utilities Commission v. Coach Co.*, 236 N.C. 583, 73 S.E. 2d 562.

In our opinion the Utilities Commission has exclusive jurisdiction to hear and determine the controversy involved in this proceeding, and we so hold, subject to the right of appeal therefrom to the Superior Court. G.S. 62-26.6, as amended by the 1955 Session Laws of North Carolina, Chapter 1207.

In light of the conclusion we have reached, the action of the court below in overruling the defendant's demurrer and restraining it from putting into effect its proposed schedules, is reversed. This does not mean, however, that the defendant may proceed to put its proposed schedules into effect. The controversy with respect thereto having arisen, the defendant may not change its schedules or curtail its services unless it is given authority to do so by the Utilities Commission.

Reversed.

Johnson, J., not sitting.