J. M. HUNSUCKER, C. A. LEWIS, E. R. BROWN, G. B. WILLIAMS, T. N. SLACK, J. B. HAMMOND, J. H. COCHRAN, E. T. DENNIS, DR. C. E. McMANUS, S. C. STEWART, W. C. LASSITER, AND OTHERS, TAXPAYERS AND CITIZENS OF HEMP, NORTH CAROLINA, v. STANLEY WINBORNE, THAD EURE, AND HARRY McMULLAN, CONSTITUTING AND COMPOSING THE MUNICIPAL BOARD OF CONTROL OF NORTH CAROLINA.

(Filed 1 December, 1943.)

**1. Municipal Corporations § 5: Constitutional Law § 4d—**

The Municipal Board of Control is a creature of the General Assembly within the provision of Art. II, sec. 29, of the Constitution of North Carolina.

**2. Municipal Corporation § 5: Pleadings § 15—**

In a civil action to restrain the execution of an order changing the name of a town, C. S., 2779, 2781, 2782, where the complaint contains no allegation that the Board of Municipal Control has failed to observe and follow the requirements of the statutes and no allegation that the said Board has acted capriciously or in bad faith, demurrer to the complaint for failure to state a cause of action was properly sustained, and there was no error in the court's dissolving a restraining order theretofore granted and dismissing the action.

**3. Municipal Corporations § 5—**

Upon the hearing by the Board of Municipal Control of a petition to change the name of a town, the Board has power to investigate and

determine whether or not the requirements of C. S., 2781, 2782, have been complied with.

**4. Appeal and Error § 18—**

If the Board of Municipal Control should err in its findings, the error may be corrected by the Superior Court upon a writ of *certiorari*, there being no provision in the statute for an appeal. Unless so reviewed, ordinarily the findings of the Board are conclusive and cannot be collaterally attacked.

**5. Same: Fraud § 8—**

Conceding the complaint to be a petition for a writ of *certiorari*, C. S., 630, it fails to make a proper showing of merit, upon which alone *certiorari* will issue, for the mere allegation of fraud is insufficient. The law requires that, if fraud be relied upon, all essential facts and elements constituting the fraud must affirmatively appear from the pleading.

APPEAL by plaintiffs from *Burney, J.,* at 10 May Term, 1943, of WAKE.

Civil action instituted 23 April, 1943, to restrain the execution of order changing name of town of Hemp to the name of Robbins—heard upon demurrer to complaint.

Though the order entered on 1 April, 1943, by defendants Municipal Board of Control, acting upon petition filed on 25 January, 1943, changing the name of the town of Hemp to that of Robbins, to become effective at 12:01 a.m., on 1 September, 1943, is not made a part of the complaint of plaintiffs, it is referred to and attacked therein by plaintiffs and is made a constituent part of the case on appeal to this Court, and is treated by the parties as if it were in fact specifically made a part of the complaint, and will be so considered on this appeal.

Summarized, the order sets forth:

1. That on 26 February, 1943, after notice in substantial compliance with the requirements of sec. 2781 of Consolidated Statutes, a fact found by the Board, a hearing upon the petition was held by the Municipal Board of Control, in the hearing room of the Utilities Commission in the city of Raleigh, when and where attorneys representing the petitioners, and attorney representing the persons objecting to the change, and numerous citizens for and against the change appeared, and were heard by statements and arguments. But that at said hearing the question being raised as to whether or not the petition was signed by the required number of resident electors and resident freeholders, an adjournment was taken until Friday, 12 March, 1943, when the hearing would be resumed.

2. That on Friday, 12 March, 1943, on further hearing at same place, the same attorneys representing petitioners and respondents appeared, and the Board heard further statements and arguments from

the interested parties. The Board found (a) "that the petition was signed by many more than a majority of the resident qualified electors and by many more than a majority of the resident freeholders or homesteaders of the town of Hemp"; (b) "that the name 'Hemp' is not a suitable name for a growing and prosperous town . . . and . . . was selected for the town without any particular reason therefor and . . . has no significance but was substituted only a few years ago for the name of 'Elise' by which the town was formerly known"; (c) that "the large majority of the citizens of the town who have requested that the name be changed to Robbins has done so because of the fact that this is the name of the principal owner of the Pinehurst Cloth Mill, which is operated in the town of Hemp," who "has been very generous and public spirited in all of his relationships with the town of Hemp and its people," and "together with the management of the mill, has promoted many enterprises of great civic value to the community and has been largely instrumental in the progress and development of the town"; and (d) that "in the hearings before the Board the persons objecting to the change of the name of the town of Hemp, based their objections largely on the grounds that confusion and inconvenience would grow out of it," pointing out that it would be necessary to change the name of the post office, including the rural routes which would be served by the post office, and the name in railroad tariffs and schedules, bus schedules, etc.; also on the ground that a change at this time during the war period might cause some inconvenience. And the order continues: "The Board having fully considered the petition for the change of the name of the town and all of the objections raised thereto, and it appearing to the Board that the change of the name of the town of Hemp to Robbins is strongly advocated by a large majority of the resident qualified electors and a large majority of the resident freeholders or homesteaders, the Board is of the opinion that the will of the majority of such citizens of the town should be given effect, and that it is for the best interests of the town that its name be changed as requested by them. It is, therefore, ordered that the name of the Town of Hemp shall be changed to the name of Robbins, this change to become effective at 12:01 a.m. on the 1st day of September, 1943."

Plaintiffs, eleven in number, "and others," styled "taxpayers and citizens of Hemp, North Carolina," in their complaint, attack the said order of the Board of Municipal Control, succinctly stated, upon the grounds that signatures of at least fifty persons signing the petition upon which it is based were obtained by fraud, duress, intimidation and threats of certain business interest, Pinehurst Cloth Mill, and its officers, agents and employees, by reason of which the petition lacked the *bona fide* signatures of a majority of the resident qualified electors and

of the resident freeholders or homesteaders of the town, as required by the statute.

The fraud as alleged is in general terms and, stated briefly, is as follows: That the matter of changing the name of the town of Hemp to Robbins was instigated and begun by W. P. Saunders, vice-president of Pinehurst Cloth Mill, for the purpose of creating a monopoly and preventing other businesses locating at the town, and not for the purpose of bettering the community or for best interest of the public at large. That the Pinehurst Cloth Mill, being the owner of fifty houses in the mill village of Hemp, conveyed same to the Hemp Housing Company, a corporation of which Saunders was president, and thereafter these houses valued at $1,000 or more "were presented to workers in the mill with instructions to purchase same" and "could be bought for $3.50 down payment." That all such sales were not in good faith but were made for the fraudulent purpose and intention of qualifying the purchasers as freeholders to sign the petition to change the name of the town. That large sums of money were spent in boosting Karl Robbins, a nonresident, president of said Pinehurst Cloth Mill, and in attempting "to purchase the entire community of Hemp." That the petition was placed in the mill proper and all workers and those receiving money from Mr. Karl Robbins, or the Pinehurst Cloth Mill were ordered and directed to sign, and "said order was accompanied by threats, by intimidation and also by large promises of reward. That the entire matter of changing the name was not one of free will of the people, freeholders and voters, but was one of economic pressure, threats, coercion and intimidation." That "certain names and signatures were placed on the petition which were all written in the same handwriting and were not in truth and in fact signatures of the persons purporting to sign." That "said signatures and all efforts to change the name of the town were obtained by the Pinehurst Cloth Mill, Karl Robbins, President, by the payment of money to employees and others and the said petition represents a fraudulent purchase and not the free will of homesteaders and freeholders in Hemp."

The complaint further alleges: That as the town has bonds outstanding, financial confusion is likely to follow the change of name of the town; that the credit of the town may be injured, and all property owners residing therein, including the plaintiffs, will be irreparably damaged thereby; that the plaintiffs also own property and businesses in connection with which they have spent large sums of money in printing stationery, making advertisements with foreign business firms and with rating bureaus and, as a result, the change of name, most particularly at this time, will result in irreparable damage to the plaintiffs and to their businesses; that for forty years the town of Hemp and the

numerous business firms and industries therein have enjoyed good-will and name and a market has been established for their products, and such good-will will be destroyed, and irreparable damage done by a change in the name of the town; and that on the other hand, as the Pinehurst Cloth Mill ships none of its goods over railroads or other public carriers, a change of name will not affect it with respect to motor and railroad freight rates and bus transportation.

Plaintiffs further allege:

"13. That the Order entered by the Municipal Board of Control of North Carolina is void for the reason that they were not empowered to pass upon an issue of fraud, duress and intimidation, which issue was raised before them by affidavit. That said Board was without jurisdiction to pass upon a matter which must be determined under law in the courts or a court of proper jurisdiction. That said Order is void for that the Board of Municipal Control did not have jurisdiction there not being upon the petition the required number of *bona fide* signatures of voters and freeholders resident of the town of Hemp. And it is further void for that the Order is so indefinite and uncertain in its terms and conditions as to render it void at law."

Upon these allegations plaintiffs say that they are entitled (1) to have the court pass upon the question as to whether the petition "was obtained by the false and fraudulent duress and intimidation and purchase as hereinbefore set forth," (2) to have the Municipal Board of Control restrained from further proceedings or carrying into effect the said order which is alleged to be void; and (3) to have the Mayor and Board of Commissioners of the town of Hemp, their servants, agents, employees, attorneys or any other person from putting said order into effect until this matter is finally determined by the courts, and in these respects plaintiffs pray injunctive relief. And by amendment to complaint plaintiffs further invoke protection in specific sections of the North Carolina Constitution.

Defendants demurred to the complaint for that it fails to state facts sufficient to constitute a cause of action against the defendants in that, among other things, it appears (a) that the Municipal Board of Control has performed all the duties with reference to the petition for changing the name of the town of Hemp which, under the statute, it is permitted to perform, and this suit was instituted after the order changing the name had been signed and filed; (b) that the Municipal Board of Control in hearing the petition for the change of the name of the town of Hemp was charged with the responsibility of ascertaining that the petition was signed by a majority of the resident qualified electors and a majority of the resident freeholders and homesteaders in the town, and, upon challenge as to the sufficiency of the petition by reason of signa-

tures alleged to have been obtained thereon by fraud or otherwise, it was' in law the duty of the Board to pass up the same, and its action could be reviewed only upon a writ of *certiorari;* and (3) that the allegations of fraud and duress are general, and lack that particularity required to constitute a cause of action therefor; but, if sufficient in this respect, there is absence of allegation that such fraud was practiced upon enough persons to have invalidated the petition upon which the order of the Board is based.

Upon hearing in the Superior Court the demurrer of defendants was sustained, the restraining order theretofore granted was dissolved and the action was dismissed.

Plaintiffs appeal to Supreme Court and assign error.

*H. F. Seawell, Jr., W. D. Siler, and L. R. Varser for plaintiffs, appellants.*

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for defendants, appellees.*

WINBORNE, J.   Plaintiffs present for decision on this appeal these two questions:

1. Did the court below commit error in dismissing this action?

2. Are the plaintiffs entitled to a motion in the Supreme Court that this action be remanded to the Superior Court of Wake County to the end that a writ of *certiorari* to Municipal Board of Control be granted to bring up for review the proceeding relating to the change of the name of the town of Hemp to that of Robbins

Each question must be answered in the negative.

In regard to the first question: The Municipal Board of Control is a creature of the General Assembly within the provisions of Article II, section 29, of the Constitution of the State of North Carolina.   While this section of the Constitution forbids the General Assembly to pass any local, private, or special act or resolution relating to changing the name of cities, towns and townships, it provides that the General Assembly shall have power to pass general laws regulating such matters.   Pursuant thereto the General Assembly of 1917 passed an Act, Public Laws 1917, chapter 136, subchapter II, to provide for the organization of cities, towns and incorporated villages, in section 4 of which the Municipal Board of Control, composed of the Secretary of State, as secretary, the Attorney-General, as chairman, and the Chairman of the Corporation Commission, was created, C. S., 2779, with the power to hear and pass upon petitions for such purpose in accordance with procedure prescribed in sections 1 to 3, both inclusive, which became sections 2780, 2781 and 2782 of Article 13 of chapter 56 of Consolidated Statutes.

And in 1935, section 1 of the 1917 Act, which became section 2779 of Consolidated Statutes, was rewritten and re-enacted, substituting therein the Utilities Commissioner for the Chairman of the Corporation Commission as a member of the Municipal Board of Control, and giving to the Municipal Board of Control the power and privilege of changing the name of any said town or municipal corporation within the bounds of the State of North Carolina—prescribing therefor the procedure prescribed in sections 2781 and 2782 of Consolidated Statutes, Public Laws 1935, chapter 440.

The procedure outlined in these statutes as read to conform to a proceeding for changing the name of a town, pertinent to this appeal, may be briefly stated as follows: (1) The petition, upon which the proceeding is initiated and based, must be signed by a majority of the resident qualified electors and a majority of the resident freeholders or homesteaders of the town. (2) Date and place of hearing shall be fixed and notice thereof given all as prescribed. (3) No formal answer to the petition is required, but any qualified voter or taxpayer of the town may appear at the hearing of such petition, and the matter shall be tried as an issue of fact by the Municipal Board of Control. (4) The Board shall file its findings of fact at the close of the hearing, and if it shall appear that the allegations of the petition are true, that all the requirements of the statute have been substantially complied with, and that the change of the name of the town will better subserve the interest of the town, the Board shall enter an order changing the name as proposed in the petition. (5) Upon the approval of the Board and the recording of the papers as prescribed the change of name is complete.

In the present case there is no allegation that the Municipal Board of Control has failed to observe and follow the requirements of the statute. And there is no allegation that the Board has acted capriciously or in bad faith. *Pue v. Hood, Comr. of Banks,* 222 N. C., 310, 22 S. E. (2d), 896; *Warren v. Maxwell, ante,* 604. The allegation upon which plaintiffs base this action is that the Board has no power to determine whether or not the petition has the *bona fide* signatures of a majority of the resident qualified electors and a majority of the resident freeholders or homesteaders of the town, when challenged by a charge of fraud practiced in obtaining such signatures. It is true that the statute requires the petition to be signed by a majority of such persons as a prerequisite to its sufficiency, but that is a question of fact to be determined by the Municipal Board of Control. The statute creating the Board expressly provides that "if it shall appear," among other things, "that all the requirements of this article have been substantially complied with" the Board shall enter an order changing the name, etc. Manifestly, it could not appear to the Board that all the requirements of the statute had been

substantially complied with unless when the signatures to petition are challenged, it could make investigation and find the facts. And in the present case the Board has investigated and found that the petition is signed in accordance with the requirements of the statute. If the Board erred in so finding, it was an error to be corrected upon review by the Superior Court upon a writ of *certiorari* obtained in apt time and upon proper showing—there being no provision in the statute for an appeal from the Municipal Board of Control to the Superior Court. And unless such review be obtained, the decision of the Board, based upon its findings in regard to the prerequisite sufficiency of the petition, is ordinarily conclusive, and cannot be collaterally attacked. See *Schank v. Asheville,* 154 N. C., 40, 69 S. E., 681; *Asheboro v. Miller,* 220 N. C., 298, 17 S. E. (2d), 105; *Warren v. Maxwell, supra.*

We now come to the second question: This action instituted in the Superior Court is in effect a collateral attack upon the decision of the Municipal Board of Control in changing the name of the town of Hemp to Robbins, with respect to a prerequisite to the petition upon which the Board acted, which may not be maintained. But conceding the complaint to be a petition for writ of *certiorari,* C. S., 630, to review the ruling of the Municipal Board of Control in respect to the sufficiency of the signatures to the petition, it fails to make proper showing of merit, upon which alone *certiorari* will issue. *S. v. Tripp,* 168 N. C., 150, 83 S. E., 630; *Taylor v. Johnson,* 171 N. C., 84, 87 S. E., 981. See also *Pue v. Hood, Comr. of Banks, supra.* The mere allegation in a pleading that an act was induced by fraud is insufficient. "A characterization of 'fraud' without any facts to support it is a mere *brutum fulmen,"*— *Stacy, C. J.,* in *Cotton Mills v. Mfg. Co.,* 218 N. C., 560, 11 S. E. (2d), 550. "The law requires that if fraud be relied upon, all essential facts and elements constituting the fraud must affirmatively appear from the pleading,"—*Brogden, J.,* in *Weaver v. Hampton,* 201 N. C., 798, 161 S. E., 480. "The facts constituting the fraud must be set out with such particularity as to show all the necessary elements of actionable fraud which would entitle the pleader to relief. The facts relied upon to constitute the fraud, as well as the fraudulent intent, must be clearly alleged,"—*Devin, J.,* in *Griggs v. Griggs,* 213 N. C., 624, 177 S. E., 165. See also *Petty v. Ins. Co.,* 210 N. C., 500, 160 S. E., 575. The same rule applies with respect to a charge of duress.

In the present case the allegations of fraud in respect to the signatures to the petition are broadside generalities, which are insufficient in a pleading in court where particularity of facts is necessary.

The judgment below is

Affirmed.