CITY COACH COMPANY, INC., v. GASTONIA TRANSIT COMPANY.

(Filed 30 April, 1947.)

1. Carriers § 2—

The licensing of public carriers of passengers and freight for hire along the public highways of the State is within the exclusive prerogative of the General Assembly, and it may prescribe the conditions under which and the agency or agencies by which the privilege will be granted.

2. Carriers § 5: Utilities Commission § 2—

The licensing of a carrier of passengers for compensation along a regular route between fixed termini from a point within a city thence along a public highway within the city through several unincorporated towns outside the city to a point on the public highway ⅞ of a mile outside the city, is within the exclusive jurisdiction of the Utilities Commission. G. S., 62-103 (k).

3. Carriers § 5: Municipal Corporations § 26—

A municipality granted an exclusive franchise for the operation of a motor bus transportation service over specified streets within the city and "such other routes, with the consent and approval of the city council" as the public transportation might require. Thereafter the municipality approved request for additional route along a public highway from a point within the city to a point ⅞ of a mile beyond the corporate limits. *Held:* The "approval" of the proposed route does not amount to granting of franchise by the city, and *held further* the city has no authority to grant such franchise either under G. S., 160-203, or by virtue of its implied powers.

4. Carriers § 5: Utilities Commission § 3—

License to a common carrier must be written and granted by the Utilities Commission as such, G. S., 62-105, and an oral permit transmitted by telephone by the Chairman of the Utilities Commission is not a valid authorization.

**5. Utilities Commission § 1: Courts § 3a—**

    The powers vested in the Utilities Commission in respect to the licensing, supervision and control of franchise carriers of passengers and property for compensation and to hear complaints are comprehensive and ordinarily the courts will not exercise original jurisdiction over any question which may arise in respect thereto.

**6. Same: Injunctions § 4i—**

    Injunction will lie to protect the rights and privileges of a duly licensed franchise carrier from infringement by an interloper possessing no franchise or other claim of right.

APPEAL by plaintiff from *Olive, Special Judge,* at October Term, 1946, of GASTON.

Civil action to restrain defendant from operating buses over and along the bus franchise route of plaintiff.

The plaintiff is an interurban carrier of passengers for hire and holds a franchise issued in 1936 which permits it to operate its buses on State Highway 7, from the City of Gastonia over and along East Airline Avenue and Ozark Avenue, which are a part of said highway within said city, to points east.

In 1942 Gastonia granted an exclusive franchise to defendant to operate a motor bus transportation service over and upon the streets of that city along the routes therein specified and "such other routes, with the consent and approval of the City Council of the City of Gastonia, N. C., as the public transportation demands, or the public may require." On 20 November 1945 defendant requested authority to establish an additional bus route to begin at the intersection of West Main Avenue and South Street in said city, extending along Main Avenue thence to Airline Avenue, to Ozark Avenue, to the city limits, and thence along State Highway 7 to a point at or near the overhead bridge at intersection of lower Dallas Road and Highway 7. The route thus outlined is a part of plaintiff's franchise route and serves several unincorporated mill villages outside the corporate limits of Gastonia. The request was approved by resolution adopted by the City Council 20 November 1945.

On 28 November 1945 defendant began the operation of buses over said route which is a part of Highway 7 and extends about seven-eighths of a mile beyond the corporate limits of Gastonia. Thereupon plaintiff instituted this action for injunctive relief and obtained a temporary restraining order.

On the hearing of the rule to show cause the temporary restraining order was dissolved and the cause was continued to the final hearing. When the cause came on to be heard in the court below the court, after hearing, entered judgment denying injunctive relief and dismissing the action. Plaintiff excepted and appealed.

*Basil L. Whitener for plaintiff appellant.*
*L. B. Hollowell for defendant appellee.*

BARNHILL, J.   This appeal poses this question for decision: Is a municipality vested with authority to grant a franchise for the transportation of passengers for hire over a route extending from a point within the city along streets which form a part of a public highway to a point seven-eighths of a mile beyond the corporate limits of the city?

The business of carrying passengers and freight for hire by motor vehicle over and along the public highways of the State is a privilege the licensing of which is peculiarly and exclusively a legislative prerogative. The General Assembly may prescribe the conditions under which, and the agency or agencies by which, the privilege will be granted. This it has elected to do.

The Utilities Commission is given the power to grant licenses or franchises for the operation of motor buses over and upon the public highways, G. S. 62-105, *Utilities Com. v. Coach Co.,* 224 N. C., 390, 30 S. E. (2d), 328, and to exercise general supervision and control over all public utilities and public service corporations of the State.   G. S. 62-27.

"Public utility" as thus used "includes persons and corporations . . . owning or operating in this state equipment or facilities for: (4) Transporting persons or property by motor vehicles for the public for compensation, but not including taxicab, operating on call, or truck transfer service in cities or towns."   G. S. 62-65 (e) (4).

And "public highway" as that term is defined in the Motor Bus Law "means every street, road, or highway in this State, whether within or without the corporate limits of any municipality."   G. S. 62-103 (o).

The authority vested in the Commission includes the power to supervise the services rendered by carriers of freight or passengers, G. S. 62-30 (1), and to fix the rates to be charged by all public utilities, including those within cities other than railroads using steam as a motor power.   G. S., 62-36.

Every person or corporation desiring to operate motor buses over the highways of the State for the transportation of passengers or property for compensation must first apply to and obtain from the Commission a franchise certificate authorizing such operation.   G. S. 62-105, *Utilities Com. v. Coach Co., supra.*

This includes every person or corporation "owning, controlling, operating or managing any motor vehicle used in the business of transporting persons or property for compensation between cities, or between towns, or between cities and towns, *or over a regular route,* over the public highways of the State, as public highways are defined" in the Act, G. S. 62-103 (k); and "town" as thus used "means any unincorporated community, point, or collection of people having a geographical name by

which it may be generally known and is so generally designated." G. S. 62-103 (m).

As originally defined "motor vehicle carrier" included only motor carriers operating between cities, or between towns, or between cities and towns, Sec. 1 (k), Chap. 136, P. L. 1927. Interpreting that section as it then existed, this Court held that a franchise was required from the Utilities Commission only' when the carrier was operating with cities or towns as fixed termini. *Winborne, Utilities Comr., v. Mackey*, 206 N. C., 554, 174 S. E., 577; *Winborne, Utilities Comr., v. Browning*, 206 N. C., 557, 174 S. E., 579; *Winborne, Utilities Comr., v. Sutton*, 206 N. C., 559, 174 S. E., 580. Thereafter the Legislature amended the section by adding the phrase "or over a regular route." Sec. 2, Chap. 247, P. L. 1937. Thus the Act was broadened and extended so as to include all motor bus carriers operating over a regular route between fixed termini.

This summary of the pertinent law leads to the conclusion that the Utilities Commission and it alone has the power to grant defendant a franchise for the operation of its buses over the route in controversy. The defendant is a carrier of passengers for compensation and it proposes to operate its buses upon a public highway over a regular route between fixed termini. Jurisdiction to license such operation rests exclusively in the Utilities Commission.

The ordinance of the City of Gastonia under which defendant claims the right to operate its buses on the proposed route purports to grant a franchise within the city only and the resolution of 20 November 1945 simply "approves" the proposed route. Hence the city has never undertaken to grant defendant a franchise to operate its buses on Highway 7 beyond the corporate limits of the city. Its claim of authority from this source to exercise the franchise rights now asserted by it is without foundation in fact.

Nor is defendant aided by G. S. 160-203. The application of that Act is expressly limited by its own terms. It does not include the granting of an extraterritorial franchise.

In view of the clear intent of the Legislature to vest in the Utilities Commission control over the issuance of all franchises for the operation of motor buses for the transportation of passengers over regular routes on the streets, roads, and highways of the State within or without cities and towns we cannot hold that the city had authority to grant defendant a franchise to operate over the proposed route either under the terms of G. S. 160-203 or by virtue of its implied powers.

The policy to be followed by the Commission is written in the statute. It contemplates a written license, G. S. 62-105, granted by the Commission as such. G. S. 62-105. An oral permit transmitted by telephone is without force or effect. Hence, what transpired between the secretary-

treasurer of defendant and the Chairman of the Utilities Commission did not constitute a valid authorization for defendant to operate its buses on the proposed route in competition with plaintiff.

It follows that the conclusion of the court below that defendant "has the necessary legal authority from both the governing authorities of the City of Gastonia, North Carolina, and the North Carolina Utilities Commission" to continue the operation of its buses over the franchise route of plaintiff described in the complaint and answer must be held for error. The defendant, although acting in good faith, is an interloper invading the prerogatives, privileges and rights of the plaintiff. G. S. 62-110.

The powers vested in the Utilities Commission in respect to the licensing, supervision and control of franchise carriers of passengers and property for compensation and to hear complaints are comprehensive. Ordinarily the courts will not exercise original jurisdiction over any question which may arise in respect thereto. *Hunsucker v. Winborne,* 223 N. C., 650, 27 S. E. (2d), 817. However, when it is made to appear that the rights and privileges of a duly licensed franchise carrier are being infringed and its property rights invaded by an interloper possessing no franchise or other valid claim of right, a court of equity will intervene and protect the rights of the injured party. It follows that the court below erred in denying plaintiff the injunctive relief prayed.

The right to make application for a franchise in the manner provided by statute is still open to the defendant.

The judgment below is

Reversed.